## JOHNSON v. CHRISTIAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 15. Submitted October 12, 1888. — Decided November 5, 1888.

When a person, who has been in the habit of dealing with an agent, has no knowledge of the revocation of his authority, he is justified in acting upon the presumption of its continuance.

A court of equity will not enjoin a judgment at law, unless it is shown that the complainant was prevented from resorting to a legal defence by fraud or unavoidable accident, without fault or negligence on his part; but it will do so if the matters set up in the bill, as a ground of relief, constitute equities as a defence in the action at law.

In the United States courts a recovery in ejectment can be had upon the strict legal title only, and a court of law will not uphold or enforce an equitable title to land as a defence in such action.

On the only issue of fact raised by the pleadings, the allegations of the bill are sustained by the proof.

THIS was a suit in equity brought in the United States Circuit Court in 1883 by the appellees, George Christian and Jerry Stuart, against the appellant, Joel Johnson, praying an injunction to restrain him from enforcing a judgment in ejectment which he obtained in that court against said appellees, for the recovery of certain lands in their possession, and to quiet their title to said lands against the claims of said appellant.

The bill alleged that one Julia J. Johnson, on the 8th day of March, 1871, as guardian of appellant, then a minor, loaned through her agent, Lycurgus L. Johnson, to one James F. Robinson, out of the funds of said appellant, $9387.95, for which said James F. Robinson delivered to said Lycurgus L. Johnson notes for the amount, payable to Mrs. Julia J. Johnson, as guardian; and to secure said loan executed to Johnson a deed of trust conveying to him, as trustee, for said Julia J. Johnson, as guardian for appellant, certain lands therein described, with the usual power of sale upon failure to pay the aforesaid notes when due; that after this transaction the said appellees bargained for and purchased from Robinson a tract

of 500 acres, being part of the land conveyed by the aforesaid trust deed, the said complainants agreeing to pay therefor 120 bales of cotton, which they averred to be a fair and adequate consideration, and the full value of the lands.

The bill further alleged that the said purchase was made with the full knowledge and consent of the said Lycurgus L. Johnson, who, in his capacity as said trustee and also as general agent of the said Julia J. Johnson, as guardian aforesaid, agreed and contracted that if the complainants would pay over to the said Julia J. Johnson the price agreed to be paid for said lands according to the terms of the purchase from Robinson as above stated, the amount should be credited on the debt of Robinson, and the said tract purchased by them should be released from the deed of trust. That this contract and agreement of her said trustee and agent was ratified and confirmed by the said Julia J. Johnson, as guardian, who received the entire consideration agreed by them to be paid for said land, with a full knowledge of and acquiescence in said contract and agreement. That the said complainants had, in accordance with the stipulations and requirements of said trustee and agent, paid over the price agreed for said 500 acres of land, every dollar of the proceeds of which had gone to said Julia J. Johnson, as guardian of appellant, who had since then become of age.

The complainants further stated, that afterward, the said Lycurgus L. Johnson having departed this life, his administrators advertised and sold, under the deed of trust, all the lands mentioned therein, including the said tract of 500 acres bought and paid for by complainants; and that they were bought in by the defendant, Joel Johnson, who was then of lawful age.

That afterwards said defendant, claiming by virtue of said sale and purchase, instituted his suit in ejectment on the law side of the court, and that the complainants not being admitted to interpose in said ejectment suit their equitable defence to the same, he did at the    term    188  obtain a judgment in ejectment against them, and now seeks to oust them of the possession of said lands by writ of possession founded on said judgment.

The prayer of the bill was, that the judgment in ejectment may be enjoined, and that the title of the complainants may be quieted, and such further relief, etc.

Joel Johnson in his answer denied that said Lycurgus L. Johnson was the agent and business manager of said guardian, Mrs. Julia J. Johnson, or that he acted as such in and about her business as guardian; and asserted that if any contract or agreement, such as that alleged in the bill, was made with said appellees by said Lycurgus L. Johnson, it was not made with the knowledge or by the authority of said Julia J. Johnson, as guardian aforesaid, expressed or implied, nor in any manner recognized or ratified by her receipt of any of the consideration paid by said appellees for said land with knowledge of any such contract or agreement. Further answering, he said, "That if complainants are not protected by their vendor it will be a great wrong to them, but one for which this defendant is not in any manner responsible."

The complainants filed a general replication to this answer. A preliminary injunction was granted, which the court, on final hearing, made perpetual. From this decree the defendant appealed.

*Mr. Attorney General* and *Mr. D. H. Reynolds* for appellant.

The bill in this case states that the appellees were not admitted to make their defence in the action of ejectment. The orderly way for them was, if standing on equitable rights alone, to have submitted to judgment in that action, before proceeding to enforce their supposed equities. *Conway* v. *Ellison*, 14 Arkansas, 360; *Herndon* v. *Higgs*, 15 Arkansas, 389, 392; *Dickson* v. *Richardson*, 16 Arkansas, 114; *Earle* v. *Hale*, 31 Arkansas, 473. This, however, was not done, but it seems some effort was made by them to interpose their defence, but they were not *admitted* to do so. Effort must have been made to put in the defence, but what that consisted of is not shown, unless the bill itself contains it. There is nothing in the record to show that any certain defence was offered by

the parties, and ruled by the court to be out of place as being equities or *equitable defences.* Taking, then, the bill to contain all there is of a defence, is it in its nature an equitable defence? Or could it not have been admitted in the action of ejectment? To maintain the suit in ejectment by Johnson; he must have shown, 1st, a legal estate in himself; 2d, right of entry; 3d, defendants in possession. *Daniel* v. *Lefevre,* 19 Arkansas, 201. Johnson held a deed for the lands under the trust sale, and appellees held one from Robinson, and appellees were in possession and claimed they were entitled to hold because of their deed, and having paid for the land, as they agreed with Robinson to do; therefore the dispute was squarely on the legal estate and the right of entry. Why could not these things be contested at law as well as in equity? These are of the very matters that law passes upon, and not equity. These are legal questions, pure and simple; and there is no averment in the bill, or allegation anywhere, that they were prevented from interposing their defence by accident of any kind, or by the fraud of appellant, and the suit should have been dismissed. *Goulsby* v. *St. John,* 25 Grattan, 146; *Hendrickson* v. *Hinckley,* 17 How. 443; *Insurance Co.* v. *Bangs,* 103 U. S. 780; *Crim* v. *Handley,* 94 U. S. 652; *Verey* v. *Watkins,* 18 Arkansas, 546, 551; *Murphy* v. *Harbison,* 29 Arkansas, 340.

*Mr. U. M. Rose* for appellees.

MR. JUSTICE LAMAR, after stating the case, delivered the opinion of the court.

The only issue of fact raised by the pleadings relates to the agency of Lycurgus L. Johnson for Mrs. Julia J. Johnson, in her capacity as guardian of appellant, in the loan of the funds of her ward to Robinson upon the security binding the real estate of Robinson, and the subsequent transactions with appellees as vendees of a part of that land; and upon this point we are of opinion that the allegations of the bill are abundantly sustained by the proof.

James F. Robinson, the vendor of the appellees, testified substantially that he knew that Mr. Johnson acted as the agent for Mrs. Julia J. Johnson, in her capacity as guardian of Joel Johnson, in some matters, and especially in the loan of the money to him; that about the 1st of January, 1871, he borrowed from Mrs. Julia J. Johnson, as guardian of Joel Johnson, the sum of $9387.95 ; made the negotiation with Mr. Lycurgus L. Johnson, *exclusively;* and that he had no recollection of ever having talked with Mrs. Johnson about the matter until after the death of Mr. L. L. Johnson. All the transactions in regard to this loan were made with Mr. L. L. Johnson, or under his direction. At the time he negotiated the loan of $9387.95 he executed, jointly with his wife, Mary F. Robinson, a deed of trust on certain lands to Mr. L. L. Johnson, as trustee, to cover said loan. And in his cross-examination on this point he states that he does not think Mrs. Johnson was present at the time the loan was made. Believes she was not present. Mr. Johnson delivered to witness a check for the loan. It was her check, he thinks. Saw from the records in the recorder's office that Mrs. Johnson signed the deed of trust to secure the loan. Referring to the transaction with appellees, he says he was acquainted with the plaintiffs in the case. ... . . Part of the lands embraced in the deed of trust were subsequently sold by himself and wife to the plaintiffs in this suit. When he was negotiating the sale with the plaintiffs, which was about a year after he borrowed the money, he told them there was a deed of trust on the land held by Mr. L. L. Johnson. He went with either Christian or Stuart — he does not remember which, possibly either or both — to see Mr. Johnson about the matter, and Mr. Johnson agreed with them and himself (Robinson) that, upon the payment to him, acting for Mrs. Johnson, or to Mrs. Johnson herself, of the purchase money agreed upon, he would quit-claim to them the land. The plaintiffs have paid for the land the price agreed upon, which was 120 bales of cotton, 420 or 425 pounds each. The purchase price was all paid in cotton, excepting $1035, which was paid in money by Mr. W. W. Ford, which sum was the estimated value of some

thirty odd bales of cotton, balance then due. The plaintiffs not having the cotton ready, and being anxious to complete their payments and perfect their title to the land, he agreed that the balance of cotton due him might be paid in money, at the market value of cotton at that time. Mr. Ford made the valuation, and paid the money to Mrs. Johnson for them. In his cross-examination on this point he says that the object of the visit of himself with the plaintiffs to see Mr. Johnson was to convince the plaintiffs that upon the payment of the purchase price for the land, they would get a good title to the place. Mr. Johnson agreed that, upon the payment of the purchase money for the place he would release any claim that he might have against the property as trustee; he supposed that Mr. Johnson was acting for Mrs. Johnson at that time, as he had been previously and did afterwards. In his re-examination he states that he thinks he informed Mr. Johnson of every pound of cotton received from the plaintiffs, directed him how to ship it, and such of the cotton shipped to his own account was shipped with his consent, with the understanding that the proceeds were to be turned over to Mrs. Johnson, or to Mr. Johnson for her.

His testimony as to the payment of the purchase money to Mrs. Johnson, and her acceptance of it as paid in consideration of the land purchased by the appellees under the agreement, fully corroborated by the testimony of W. W. Ford, who testifies that he was a merchant and near neighbor of Mrs. Johnson, and made out the accounts current, and kept the accounts for Mrs. Johnson. The settlement of Mrs. Johnson as guardian, filed in the Probate Court, was made out by witness from data furnished by Mrs. Johnson. He also made out the statement of the account marked "Exhibit B." It contains all the items of account between James F. Robinson and Mrs. Julia J. Johnson as guardian of Joel Johnson. There are in that statement four items of credit on said loan that witness can trace to Christian and Stuart as payments on their purchase from Major Robinson, to wit, $431.99, $1035, $804.53, $1000. This statement was made out from his own knowledge, and from information furnished by Mrs. Johnson. The

item of $1000 was paid to her by Lycurgus L. Johnson, and repaid to him by cotton from Christian and Stuart, appellees. Credit was indorsed on the note by Mrs. Johnson herself. She told witness he paid it. The item $431.99 was received from Christian and Stuart in cotton, and witness knows she got the money. The $1035 witness paid for Christian and Stuart. In the spring of 1879 the plaintiffs came to witness and asked him to pay for them the balance on their purchase of the land from Robinson. This amount was settlement in full of balance by Major Robinson with plaintiffs for their land. The valuation of the cotton was made by witness with the consent of Robinson and Christian and Stuart. Witness had told Mrs. Johnson that plaintiffs owed a balance of $1035 for the purchase money of lands they had purchased from Major Robinson, and that witness was going to pay it for them. She afterwards sent to witness for the money, and he paid it. Plaintiffs gave witness their note for the amount.

Numerous other witnesses sustained the testimony of Robinson and Ford. The appellant only introduced the deposition of his guardian in support of the denials in the answer. Mrs. Johnson denies that she authorized her brother, L. L. Johnson, to transact any business for her with Major Robinson; states that he refused to have anything further to do with the business; that he never acted as her agent as guardian; that she never authorized any one to make a promise to the plaintiffs that their lands should be released from the deed of trust upon paying the price they had agreed to pay for the same; that if her brother, L. L. Johnson, did receive cotton from plaintiffs it was without her knowledge, and that Mr. Ford never paid any money for plaintiffs on account of said loan.

Upon this testimony we see no grounds for disturbing the decree of the court below. The denial on the part of Mrs. Johnson of her brother's agency, owing to her imperfect conception as to what constitutes an agent and to her vague recollection of her own acts, is contradicted by the facts of which she herself testifies, and by the account marked "Exhibit B," made out under her direction, in which the receipts of the pay-

ment by cotton of the appellees are set out, the last of which is the item of $1035 cash for balance on demand against Stuart and Christian, thus recognizing the receipts of the cotton and the validity of the preceding payments made to her brother, as her agent, and received by herself. Her denial of his authority to make a promise to the plaintiffs that their land should be released from the deed of trust upon their paying the price they had agreed to pay for the same, is contradicted by her subsequent declaration in these words: "I did say to my brother that if these men would pay the three thousand dollars they should have a deed, *i.e.*, I agreed to it." Upon her testimony alone it is clear that every act of Lycurgus L. Johnson in connection with this transaction, in every stage of its progress, from the loan to Robinson to the payment of the balance of the purchase money due from the appellees, was ratified by her as guardian of appellant.

In a single instance she consented to his action as her agent in respect of her guardianship — reluctantly, she says — but nevertheless consented, and ratified it absolutely and without qualification. No act or contract of his was disavowed by her to the appellees, with whom as her agent he was dealing, and from whom he was collecting payments in her behalf. Not being notified of revocation of his authority as her agent, they were clearly justified in acting upon the presumption of its continuance. Story on Agency, §§ 90, 93; *Hutch* v. *Coddington*, 95 U. S. 48; *Insurance Co.* v. *McCain*, 96 U. S. 84.

Appellant's counsel contend that the matters set up in the bill could have been pleaded as a defence in the suit of the appellant against them in ejectment, and as there is no averment that appellees were prevented from interposing those matters as a defence, in said action by accident of any kind, or by the fraud of appellant, unmixed with any fault or negligence on their part, the bill should have been dismissed.

To this we cannot agree. The principle laid down in the decisions cited in support of the objection is, that a court of equity will not enjoin a judgment at law, unless it is shown that the complainant was prevented from resorting to a legal defence by fraud or unavoidable accident, without any fault

or negligence on his part; but that it will do so, if the matters set up in the bill, as a ground of relief, constitute equities unavailable as a defence in the action at law. In the action of ejectment the issue was squarely upon the plaintiff's legal title. There is nothing in the case to except it from the general rule, that in the United States courts a recovery in ejectment can be had upon the strict legal title only, and that a court of law will not uphold or enforce an equitable title to land as a defence in such action. *Bagnell* v. *Broderick,* 13 Pet. 436, 450; *Hooper* v. *Scheimer,* 23 How. 235; *Foster* v. *Mora,* 98 U. S. 425; *Langdon* v. *Sherwood,* 124 U. S. 74, 85.

The facts alleged in appellees' bill for the purpose of showing their equitable title to the land in dispute, could not be set up by them as a plea in the action of ejectment to defeat the strictly legal title of appellant.

It is said that if appellees are obliged to resort to equity to quiet their title, Robinson, their vendor, whose failure to have their payments properly appropriated caused their lands to be sold under the deed of trust previously given by him, should have been made a party to the suit, and called upon to see that the land had been paid for; if not already, that it be paid for now.

We think this position untenable. The answer to it is, that the decree which the appellees asked for and which was rendered by the court below, granting them the relief sought for, did not undertake to settle, and did not, in effect, settle any rights or liabilities of Robinson, or of any other person not before the court, as a party to the record.

The dealings between Robinson and appellant's guardian, and the rights and obligations growing out of them, are distinct from the question of title between the parties to this suit, and have no connection with it, except as evidence tending to throw light upon that question.

*The decree of the court below is affirmed.*