HAWKINS *et al.* v. WILLS.

*(Circuit Court of Appeals, Eighth Circuit.* February 15, 1892.

1. EJECTMENT—EQUITABLE DEFENSES—RES JUDICATA.
    In ejectment in the federal court against purchasers at an execution sale by one holding a conveyance from the judgment debtor, prior in time to the lien of the judgment, the fact that the conveyance was executed in fraud of the grantor's creditors is an equitable defense, not available to defeat the action, and defendants may suffer judgment to go against them, and then resort to equity for relief against such judgment, as well as against the deed upon which it is based.

2. JUSTICES OF THE PEACE—ISSUANCE OF EXECUTION—FILING TRANSCRIPT.
    Where an action in a justice's court is aided by attachment, it is not necessary that an execution be issued by the justice and returned *nulla bona* before the transcript is filed in the county clerk's office, as required by Mansf. Dig. Ark. § 4101. Such case is governed by section 4126, which does not require the issuance of an execution as a prerequisite to the filing of the transcript in the clerk's office.

3. SAME—NECESSITY OF BOND.
    Mansf. Dig. Ark. § 4126, requiring the filing of a bond before the issue by the clerk of an execution on the filing in his office of a transcript of a justice's judgment, is restricted to cases where defendant has been constructively summoned, and does not apply where personal service has been had, or where defendant enters an appearance in the suit before the justice.

4. FRAUDULENT CONVEYANCE TO WIFE—CONSIDERATION.
    A debtor owning about $300 in personal property, and owing debts in excess thereof, conveyed to his wife a tract of 2,000 acres, in pursuance of a prior agreement made with her father to make such transfer in consideration of expenses incurred by the father in taking care of the wife and children. In an action by creditors to set aside such conveyance as to part of the property, as in fraud of creditors, it was attempted to sustain it on the ground of such payment, and also on the ground of payment of subsequent expenses in taking care of the wife and children in a long sickness. It appeared that the wife asserted no claim to the property for 12 years after it was sold on execution against the husband. *Held,* that such conveyance could not be sustained as against creditors.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

In Equity. Bill by A. D. Hawkins and others against Mary E. Wills to restrain the enforcement of a judgment in ejectment, and to set aside a deed to defendant as in fraud of creditors. Plaintiffs appeal from a decree for defendant. Reversed.

*D. W. Jones,* for appellants.

*Oscar D. Scott,* for appellee.

Before SHIRAS and THAYER, District Judges.

SHIRAS, District Judge. The facts necessary to be stated for a proper understanding of the issues arising on this appeal are the following: Prior to the 9th day of April, 1878, Charles B. Wills was indebted to A. D. Hawkins in the sum of $150 and interest, and was also indebted to other parties for amounts aggregating a few hundred dollars. On the 30th day of December, 1879, Hawkins brought suit against Charles B. Wills before a justice of the peace for Little River county, Ark., upon the indebtedness due him, and caused a writ of attachment to be issued and levied upon certain realty situated in Little River county. Personal service of the summons was had upon the defendant, Wills, and on the return-day thereof a judgment in due form was entered up by the justice in favor of Hawkins, and against the defendant, Wills, for the amount due, and also sustaining the attachment and the levy thereof upon the realty. On the 30th day of March, 1880, Hawkins caused a duly-certified transcript of these proceedings to be filed in the office of the clerk of the circuit court of Little River county, in accordance with the provisions of the statutes of Arkansas, and thereupon procured the issuance, by the clerk of said court, of a writ of execution upon said judgment, and the same was levied upon the realty previously attached; and, by due proceedings had, the realty was sold at sheriff's sale, and purchased by the plaintiff in execution, and, after the expiration of the period for redemption, a deed of conveyance thereof was executed by the sheriff, delivered to Hawkins, and duly recorded, as required by the laws of the state of Arkansas. Upon delivery of the deed, Hawkins took possession of the premises, which comprised in all 590.46 acres, and in person, or through tenants and others, to whom he had contracted to sell portions of the land, he has continued in possession, his right so to do not being questioned until in December, 1889, when Mary E. Wills, wife of Charles B. Wills, filed in the United States circuit court for the eastern district of Arkansas an action of ejectment against said Hawkins, and the parties holding under him, claiming to be the owner of said realty, and entitled to the possession. Her claim to be the owner of the property was based upon the fact that on the 9th day of April, 1878, her husband executed a deed, conveying the title of some 2,000 acres of land, including the premises in dispute in this action, to his wife, Mary E. Wills. The validity of this deed was contested by Hawkins on the ground that it was purely a voluntary conveyance, executed without consideration, and for the purpose of defrauding the creditors of the grantor. Not being able to avail themselves of the equitable title held under the sheriff's deed as a defense to the action of ejectment, the parties named as defendants did not appear therein, and judgment by default was entered against them in January, 1890. In May following, the defendants to the ejectment suit filed their bill in equity in the United States circuit court, setting forth the title acquired by Hawkins to the realty, and averring that the conveyance to Mary E. Wills was without consideration, fraudulent as to

creditors, and void as against the superior equities and rights of Hawkins and those claiming under him, and that it created a cloud upon the title acquired by Hawkins, and praying that the deed to Mary E. Wills be declared void, and that she be forever restrained from asserting any claim to the lands in dispute under said deed or under the judgment in the ejectment proceedings, and that the title of the complainants be quieted. Mary E. Wills answered the bill, and the cause went to hearing upon the pleadings and the evidence adduced by the respective parties, the court finding for the defendant and entering a decree dismissing the bill for want of equity, to reverse which the appellants brought the case to this court.

Owing to the fact that no written opinion or finding was filed by the learned judge who tried the cause in the circuit court, we do not know whether the conclusion reached was based upon any failure in the title asserted by Hawkins, or upon the question in regard to the validity of the conveyance to Mary E. Wills. Counsel for appellee argues at some length the proposition that the judgment entered in favor of Mrs. Wills in the ejectment suit is a bar to the relief sought in this proceeding. The ruling of the supreme court in *Johnson* v. *Christian*, 128 U. S. 374, 9 Sup. Ct. Rep. 87, fully disposes of this question adversely to the position of counsel for appellee, it being therein held that a judgment in ejectment is only a bar to such legal defenses as could be made available in an action at law, and does not preclude a resort to a proceeding in equity, by the defendant in the ejectment suit, to bar the judgment in that action by reason of equities and rights available in equity, but not available at law. As the ejectment suit was brought in the federal court, it was not open to the defendants therein to plead any equitable defense or to assert an equitable title as against the prior legal title seemingly held by Mrs. Wills. The defendants in that suit, to secure their rights, were compelled to invoke the aid of a court of equity, and it was therefore open to them to suffer judgment to go against them in the law action, and then appeal to the equity side of the court for relief against the judgment, as well as against the deed upon which it was based.

We pass, then, to a consideration of the question whether it appears that Hawkins, as against Charles B. Wills, has obtained a valid right and title to the realty in dispute. As already stated, the Hawkins title is based upon the judgment entered in his favor against Charles B. Wills in the attachment suit brought before the justice of the peace in Little River county. From the record it appears that the justice had jurisdiction of the cause; that the attachment was duly issued, levied, and sustained; that personal service of the summons was had on the defendant, Wills, within the jurisdiction of the court,—and therefore the judgment rendered is valid and binding. It also appears that a certified transcript thereof was duly filed in the clerk's office of the proper county, an execution was issued and levied, and the land sold in due course of proceedings, as provided for in the statutes of Arkansas.

The objections taken to the validity of the proceedings on behalf of appellee are twofold: *First.* That it does not appear that an execution

was issued by the justice, and returned *nulla bona*, before the transcript was filed in the clerk's office, as required by section 4101 of Mansfield's Digest of the Laws of Arkansas. That section applies to cases not aided by attachment, and does not include those in which a levy by attachment has been made on realty, which are provided for by section 4126, which does not require the issuance of an execution as a prerequisite to the filing of the transcript in the clerk's office, or the issuance of an execution therefrom. The *second* objection is that it does not appear that a bond was filed in accordance with the proviso contained in section 4126. It is not made to appear that a bond was not filed, and certainly this court will not assume, in a collateral proceeding, that the sworn officer of the circuit court did not observe all the requirements of the statute before issuing the writ of execution. It is expressly held in *Rust* v. *Reives*, 24 Ark. 359, that, when it appears that an execution was issued from the circuit court, it will be presumed that a bond was filed in accordance with the provisions of the statute. Furthermore, in *Bush* v. *Visant*, 40 Ark. 124, it is decided that the provision of section 4126, in regard to the filing a bond, is restricted to cases wherein the defendant has been constructively summoned, and that if due personal service has been had, or the defendant enters an appearance in the suit before the justice, then the giving a bond is not a prerequisite to the lawful issuing of a writ of execution by the clerk of the circuit court. It thus appearing that the issuance of the writ of execution was strictly in accordance with the requirements of the statute, and no exception being taken to the levy and sale made thereunder, it follows that, if the land levied upon was then liable to be seized and sold for the payment of the judgment in favor of Hawkins, he became the owner thereof by virtue of the sale and subsequent execution of the sheriff's deed to him.

This brings us to a consideration of the title held by Mrs. Wills, which, as already stated, is dependent upon the validity of the conveyance made to her by her husband in April, 1878. The evidence clearly shows that at the time this conveyance was made Charles B. Wills was indebted to several parties, including the complainant Hawkins, and that the transfer of the realty, amounting in all to about 2,000 acres, left him without available means to pay his debts. The defendant testifies that at the date of the transfer of the realty her husband had over $300 worth of personal property, consisting of cattle, a horse, farming implements, and a lot of blacksmith tools; but, assuming that this property was available to his creditors, it was less in amount than his indebtedness at the time, and hence Charles B. Wills was not justified in making a voluntary conveyance of his realty to his wife without first making provision for the payments of his just indebtedness. The rule applicable to the case is fully stated by the supreme court in *Kehr* v. *Smith*, 20 Wall. 31, in which it is said:

"Surely the voluntary provision for the wife, in such a condition of things, is not sustainable against existing creditors. Nor can it be supported on the theory that the whole estate was worth a few thousand dollars more. Suppose it was, there would still be that extent of embarrassment which would have a

direct tendency to impair the rights of creditors. In such a case a presumption of constructive fraud is created, no matter what the motive which prompted the settlement. Meyer was not only largely indebted, for a person in his situation, but it is easy to see it would have been close work for his creditors to have made their debts, if they had tried to enforce their collection by judicial process,—a surer way of ascertaining the real worth of the property than by the opinions of indifferent persons, as experience has proved that this kind of testimony is often unreliable on such a subject. The ancient rule that a voluntary post-nuptial settlement can be avoided if there was some indebtedness existing, has been relaxed, and the rule generally adopted in this country will uphold it, if it be reasonable, not disproportionate to the husband's means, taking into view his debts and situation, and clear of any intent, actual or constructive, to defraud creditors."

Tested by this rule, it is clearly manifest that Charles B. Wills was not justified in transferring the bulk of his property to his wife, reserving to himself only a small amount of personal property, which if sold would have been wholly insufficient to pay the debts he then owed. A voluntary transfer under such circumstances necessarily results in hindering or defeating creditors in the collection of the claims justly due them, and is therefore in fraud of their rights.

It is claimed, however, that there was a valuable and sufficient consideration for the transfer to Mrs. Wills, growing out of certain advances made by her father in payment of expenses incurred in taking care of Mrs. Wills and her children during periods of time when they were all at her father's house in Indiana. Mrs. Wills testified that in 1875, being then in ill health, she returned to her father's house for medical treatment. That her husband wrote her that he had no means to pay for such treatment. That he would transfer these lands to her, if her father would advance the money needed for her treatment, and that her father knew and approved of the proposition. That she had estimated that the expense would be about $2,000, but that her husband was to make the transfer whether the amount expended was more or less than the named sum of $2,000. She further testifies that she returned to her husband in December, 1875, and remained with him until July, 1878, some three months after the execution of the deed to her, when she again went to her father's house, and remained there about two years, with her daughter Mamie. That in January, 1879, another child was born to her, which died the following August. That her daughter Mamie, after the death of the infant, had the scarlet fever, and was ill for some months. From the testimony of the father it appears that he paid the expenses in connection with the sickness of his grandchildren, as well as those resulting from the illness of his daughter, and it is the sum total of all these outlays that is relied upon as making up the sum of $2,000, named as the consideration in the deed from the husband to the wife. It is manifest that in 1875, when the defendant testifies that she had the understanding with her husband and father in regard to the transfer of the lands to her, she could not possibly have foreseen the expenses that would be occasioned by the birth and death of an infant in 1878 and 1879, and the sickness of the daughter Mamie,

nor indeed of the probability that she herself would, after the lapse of three years, be in such ill health as to require her return to her father's house for treatment. The father does not testify that he agreed or became bound to furnish the means needed for the expenses of his daughter and her children, and from the whole evidence it is clear that the expenditures were made as a voluntary act upon his part, without the expectation that he would be repaid therefor by any one. It may be, as claimed by the defendant, that the fact that these expenses were paid by her father was a persuasive reason for inducing the husband to convey the lands to his wife; but, if that be so, it does not change the fact that the transfer was, in effect, a gift by the husband to the wife. As between the husband and wife, the facts detailed would be deemed a sufficient consideration to sustain the deed; but, when the rights of creditors are involved, it cannot be held that they form a valuable consideration for the transfer, of such a nature as to preclude a successful attack thereon by creditors. The wife paid nothing and the husband received nothing as a consideration for the transfer, the only effect of which was to take the title out of the name of the husband and place it in that of the wife. The subsequent actions of the parties indicate that the transfer was in fact one in form only. It does not appear that Mrs. Wills asserted any rights to the lands in dispute for 12 years after the execution of the deed to her, during which time Hawkins and those claiming under him were in possession of the premises, making improvements thereon. Several parties testify that the husband questioned the validity of the title held by Hawkins, and asserted that the time was coming when he (Wills) would be in position to assert his right to the premises, and that all parties purchasing from Hawkins would lose the amounts paid him. But assuming that, as between the husband and wife, the latter would be the owner of the property, nevertheless she holds it merely as a gift or voluntary conveyance from her husband, which, in view of the circumstances under which it was made, must be held to be void as against creditors.

The decree appealed from is therefore reversed, at cost of appellee, and the cause is remanded to the circuit court, with instructions to enter a decree in favor of complainants, holding the deed to Mrs. Wills void, so far as the same affects the realty in the bill described, and enjoining her from asserting any right or title to said realty, by virtue of said deed or the judgment in the ejectment suit, and further quieting the title to said realty in the complainants.