(50 South. 804.)

No. 17,496.

CRAIGHEAD et al. v. CONNELY, Sheriff, et al.

(Nov. 15, 1909. Rehearing Denied Dec. 13, 1909.)

TAXATION (§ 79*)—LIABILITY OF PERSONS—OWNER OF PROPERTY.

The owners of timber sold it to plaintiffs, who agreed to dig a certain canal of prescribed location and dimensions, and to leave it free of obstructions and open "when they shall have completed taking said timber," and gave their note secured by mortgage of the timber for the price. It was agreed that, upon default in payment of any one of the notes, they should all become due at once. Plaintiffs were given five years in which to remove the timber, after which whatever timber might still be on the land was to revert to the sellers. It was also agreed that plaintiffs should deaden not more than 1,000 trees before completion of the canal, and that they should be entitled to pull timber at the rate of 500,000 feet per month, and that they might pull more than that amount, but, if they did so, they should pay one of the unmatured notes, with interest, for each 500,000 feet extra per month or fraction thereof, and such note should mature and become payable at once. *Held*, that the clauses limiting the number of trees that might be deadened before the canal was completed and the number of feet of timber which might be pulled per month did not suspend the transfer of ownership, but merely suspended the right to possession, and plaintiffs, as owners of the timber under the contract, were liable for taxes thereon before the conditions were performed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 166; Dec. Dig. § 79.*]

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; W. P. Martin, Judge.

Action by Charles D. Craighead and another against A. W. Connely, Sheriff, and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Emmet Alpha and H. M. Wallis, Jr., for appellants. H. M. Bourg, Dist. Atty. (Beattie & Beattie, of counsel), for appellees.

PROVOSTY, J. Plaintiffs, having been assessed for certain standing timber, have enjoined the assessment, on the ground that they are not owners of the timber. Whether they are right or wrong in that contention depends upon the construction to be placed upon a contract entered into by them with McCallam & Cocke.

This contract recites that McCallam & Cocke sell, transfer, and deliver to plaintiffs all the cypress timber upon certain described lands for and in consideration of the price and sum of $68,540, and that the plaintiffs accept said sale and transfer, and obligate themselves to pay said price, and obligate

themselves also to dig a certain canal of which the location and dimensions are prescribed, and to leave said canal free of obstructions and open "when they shall have completed taking said timber." The contract further recites that, to represent the said price, the plaintiffs have made their eight notes, payable in 4, 5, 6, 8, 10, 12, 14, 16, and 18 months, to their own order and by themselves indorsed, and that said notes have been delivered to the vendors, and that to secure the payment of said notes a mortgage is reserved upon the property sold, and that default upon any one of the notes is to make them all due and exigible at once. Plaintiffs are given five years within which to remove the timber, after which whatever timber may still be on the land is to revert to the vendors.

So far, the reciprocal obligations under the contract are absolute and unconditional, and the plaintiffs are most unquestionably made the owners of the timber; but the contract contains also the following clauses:

"It is distinctly understood and agreed between the parties that the said Craighead & Riggs, their representatives or assigns, shall deaden no more than one thousand trees before the canal shall have been completed into the swamp lands of said McCallam & Cocke.

"It is distinctly understood that the said purchasers shall be entitled to pull said timber at the rate of 500,000 feet per month, provided that they may pull more than that amount, but in such event for each 500,000 feet extra per month or fractional portion thereof, they shall pay one of the notes not matured with interest. and said note shall mature at once and become payable at once."

Plaintiffs contend that these clauses embody conditions precedent to the transfer of the ownership of the timber; but it is perfectly evident that these clauses, which simply limit the number of trees which may be "deadened" before the canal is completed, and the number of feet of timber which may be "pulled" per month, do not suspend the transfer of ownership, but merely suspend the right to possession. McCallam & Cocke re-

tain possession as additional security for the performance of plaintiffs' obligations under the contract, just as one person may hold possession of the property of another in pledge as security for the performance of an obligation. They retain possession, not as owners, but by a precarious title created by the contract. If the property, instead of being trees standing in a swamp, were revenue yielding, the revenue would belong to plaintiffs. The possession would then be held pretty much as in antichresis.

A case closely analogous to the present one is that of Collin v. Coblenz, decided first by the Supreme Court of Paris, and on further appeal by the Court of Cassation, France, April 22, 1872. Collin v. Coblenz, Journal du Palais, 1873, p. 754. Collin had sold a manufactory with all appurtenances and all merchandise and material on hand to Coblenz, on the condition that the latter should be entitled to possession only after he should have paid the price, but should in the meantime have charge of the manufactory as manager for Collin on a salary of 25 per cent. of the profits realized from the operation of the plant; this salary to go towards paying the purchase price. After a certain amount had been paid in that manner, Coblenz went into bankruptcy, and Collin, in order not to come into competition with the creditors of Coblenz, claimed the ownership of the manufactory. The court held that the ownership had passed to Coblenz, though not the possession. "In so far as concerns the absence of delivery by Coblenz," said the court,. "we consider that tradition is not a condition precedent to the transmission of owner-ship."

As a test, counsel propound the query: What would be the situation if, on failure to pay the taxes, the property were sold at tax sale? The answer is very simple: The tax purchaser would step into the shoes of plaintiffs, except that, by operation of the.

revenue law, the property would pass to him free of mortgages. He would have the right to demand possession, on complying with the conditions precedent to the delivery of possession—the same right which the plaintiffs have.

Simpler tests are the queries: Whether, from and after the signature of this instrument, McCallam & Cocke could have sold or mortgaged this timber to another, or exercised any other right of ownership over it; and whether, had the timber perished, the loss would not have been plaintiffs'. These queries answer themselves, and proclaim the plaintiffs to be the owners.

Plaintiffs, being owners of the timber, were properly assessed with it.

The learned judge a quo reached the same conclusion in a very able and exhaustive opinion.

Judgment affirmed.