REDWINE v. CONTINENTAL REALTY CO., INC.

(Circuit Court of Appeals, Sixth Circuit. January 3, 1911.)

No. 2,046.

1. CORPORATIONS (§ 432*)—CONTRACTS—AUTHORITY OF MANAGING AGENT.

The general manager of a corporation who on its behalf made a contract, the validity and binding effect of which is not denied, is presumed to have authority to accept performance of such contract, and the other party thereto is justified in acting on such presumption.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1727; Dec. Dig. § 432.*]

2. PRINCIPAL AND AGENT (§ 81*)—COMPENSATION OF AGENT.

Plaintiff contracted with defendant to procure contracts for the sale to it of 300,000 trees of specified kinds and dimensions at not to exceed a stated price per tree, for which he was to be paid a commission. The contract was to continue for one year after which it was terminable by either party, and provided that plaintiff should use his energy and best ability to procure the contracts at as low a price as possible, but should not be held responsible for the deficiency if he failed to procure contracts for the full number of trees, in which case he should be paid a proportionate part of the commission. Plaintiff procured a single contract from other parties to furnish the full number of trees which was accepted by defendant with an express indorsement thereon that it was in fulfillment of plaintiff's contract. Defendant subsequently brought an action for breach of such second contract. Held, that plaintiff's contract was not one for a year's services, but was performed when he procured contracts for the required number of trees which were acceptable to defendant, and that, in the absence of fraud, he was entitled to recover the stipulated commission.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 81.*]

3. PRINCIPAL AND AGENT (§ 89*)—ACTION—QUESTIONS FOR JURY.

In an action for compensation, the question whether plaintiff was precluded from recovery by fraud held under the evidence one for the jury.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 89.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Eastern District of Kentucky.

Action at law by D. B. Redwine against the Continental Realty Company, Incorporated. Judgment for defendant, and plaintiff brings error. Reversed.

Harmon, Colston, Goldsmith & Hoadly, for plaintiff in error.

Worthington & Cochran and Edward W. Hines (Charles C. McChord, of counsel), for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

SEVERENS, Circuit Judge. This is an action brought by the plaintiff, Redwine, to recover compensation for services performed by him for the defendant in procuring contracts for standing trees in several counties in the state of Kentucky. The agreement under which the plaintiff undertook to procure such contracts for the defendant reads as follows:

"This agreement, made and entered into, this the 24th day of July, 1903, by and between D. B. Redwine, of the town of Jackson, Breathitt county, Ky., party of the first part, and the Continental Realty Company, incorporated under and by virtue of the laws of Delaware, with offices at, Baltimore, Md., and Jackson, Ky., party of the second part, witnesseth:

"First. That for and in consideration of the sum of one ($1.00) dollar cash in hand paid, the receipt of which is hereby acknowledged, and for the further consideration to be paid as hereinafter set out, the said first party agrees to procure contracts for (300,000) three hundred thousand standing trees, on the waters of the North fork of Kentucky river in the counties of Breathitt, Perry, Knott and Letcher, state of Kentucky, said contracts to be taken in the name of Continental Realty Company, Incorporated, in the form and manner of a blank contract hereto attached and made a part hereof, the same to be duly acknowledged by the grantors, and recorded in the proper county clerk's office, the expense of which to be defrayed by the party of the second part.

"Second. The said three hundred thousand (300,000) trees shall be made up of the following dimensions, and kinds of timber, to wit:

"White oak, twenty, 20 inches up diameter, 3 ft. from ground.
"Hickory, twenty, 20 inches up diameter, 3 ft. from ground.
"Red oak, twenty, 20 inches up diameter, 3 ft. from ground.
"Chestnut oak, twenty inches up diameter, 3 ft. from ground.
"Lynn, twenty, 20 inches up diameter, 3 ft. from ground.
"Ash, twenty, 20 inches up diameter, 3 ft. from ground.
"Cucumber, eighteen 18-inch up diameter, 3 ft. from ground.
"Poplar, 18-inch up diameter, 3 ft. from ground.

"Said timber to be measured with the proper deductions for bark thereon, and said trees shall be measured at least twenty-four (24) feet of body, three feet from the ground on the upper side, clear of limbs, knots and other defects.

"Third. The said party of the second part for and in consideration of the work to be done and the contracts secured as above mentioned agrees and binds itself to pay unto the said party of the first part the sum of five thousand ($5,000) dollars if said party of the first part secure said three hundred thousand (300,000) trees of the kinds, sizes and dimensions mentioned in clause 2nd of this agreement.

"Fourth. It is expressly understood between the parties hereto that should the party of the first part fail to secure three hundred thousand (300,000) trees he shall be paid, on the number of trees secured on the ratio of five thousand ($5,000) dollars for three hundred thousand (300,000) trees, that is

one hundred ($100.00) dollars for each six thousand (6,000) trees secured, and shall not be held responsible for the deficiency.

"Fifth. The party of the first part agrees and binds himself to secure said contracts in trees, for a sum not to exceed ($1.00) dollar per tree, and said party of the first part further agrees to use his energy and best ability to secure contracts on said timber at as low a figure as within him lies; and second party agrees that first party shall take or secure said contracts at any price not exceeding one dollar per tree.

"Sixth. Said party of the second part agrees and binds itself to pay unto the party of the first part, the seventy-five (75) per cent. of the amount of commission, upon the turning over to said second party the contracts for any number of trees, the remainder, twenty-five (25) per cent. shall be due and payable to said party of the first part, upon the abstract of title being made, and found satisfactory, the trees counted and branded by the attorneys, representatives and agents of the said second party and the number of trees determined, but should said second party fail to complete the abstracting, counting and branding of the timber inside of twelve months from the date of the contracts on the same then the said remainder of twenty-five (25) per cent. shall immediately be due, and payable.

"Seventh. The said party of the second part further agrees, and binds itself to pay all the legitimate expenses of the party of the first part while actually engaged in the business of buying trees mentioned herein; and said second party further agrees to advance such sums of money as may be necessary to secure said contracts, not to exceed ten cents per tree, money thus advanced to go as payment on the purchase price of said timber. * * *

"Ninth. It is expressly agreed between the parties hereto that the commission of first party shall be either paid in cash or in stock of Continental Realty Company, at the election of said first party. This contract shall continue for at least twelve months from the date hereof, and the same can be terminated at any time, thereafter, by either party on notice in writing duly directed and mailed to the address of the other party, in the way and manner all United States mail of the same class is mailed or posted.

"Given under our hands the day and date first above written.

"D. B. Redwine,
"Continental Realty Co.,
"By C. J. Little, Gen. Mgr."

Eight days after the date of this agreement, and on August 1, 1903, the following contract procured by the plaintiff was submitted by him to the defendant and was accepted and executed in its behalf by its general manager:

"This agreement, made and entered into this the first day of August, 1903, by and between J. B. McLin, of Jackson, Ky., and Kiah Kilbourn, of Whitesburg, Ky., doing business under the firm name of McLin & Kilbourn, party of the first part, and the Continental Realty Company, incorporated under and by virtue of the laws of Delaware, with offices at Baltimore, Md., and Jackson, Kentucky, party of the second part, witnesseth:

"That for and in consideration of the sum of one ($1.00) dollar, cash in hand paid, the receipt of which is hereby acknowledged, and for the further consideration to be paid as hereinafter set out, the said first party has sold and binds themselves to convey by deed of general warranty to second party, or order, 300,000 merchantable white oak, red oak, chestnut oak, hickory, lynn, ash, cucumber, and poplar trees, and the said first party has the privilege, if they so desire, to furnish any number they desire, not exceeding 500,-000 trees, in like number, to second party, all of said trees to be located on the waters of the North fork of Kentucky river and in the counties of Breathitt, Perry, Knott, and Letcher, or in one or more of said counties and the said trees are to be of the following dimensions, viz.:

"White oak, 20 in. and up in diameter, 3 ft. from ground on upper side.
"Chestnut oak, 20 in. and up in diameter, 3 ft. from ground on upper side.
"Red oak, 20 in. and up in diameter, 3 ft. from ground on upper side.
"Hickory, 20 in. and up in diameter, 3 ft. from ground on upper side.

"Lynn. 20 in. and up in diameter. 3 ft. from ground on upper side.
"Ash. 20 in. to 24 in diameter, 3 ft. from ground on upper side.
"Poplar, 18 in. to 24 in diameter, 3 ft. from ground on upper side.
"Cucumber, 18 in. to 24 in diameter, 3 ft. from ground on upper side.
"Poplar, 24 in. and up in diameter, 3 ft. from ground on upper side.
"Cucumber, 24 in and up in diameter. 3 ft. from ground on upper side.
"Ash, 24 in. and up in diameter, 3 ft. from ground on upper side.

"All measurements to be made 3 feet from, the ground on the 'upper side, inside of bark, or proper deductions made for bark, and to have a body at least 24 feet in length, 3 feet above the ground, to be clear of limbs, knots and other defects.

"First parties agreed and binds themselves to furnish second party with plat and certificate showing the number of acres contained in the tracts of land on which said trees are located, together with an abstract of title satisfactory to second party, or such as will show a good title and upon the acceptance of title to said land, or trees the second party agrees and binds themselves to pay to first party two dollars and fifty cents ($2.50) per tree for poplar, ash, cucumber, 24 inches and up in diameter and seventy-five cents (.75) per tree, in cash, for all other trees furnished. branded and accepted by second party as contemplated herein. Second party further agrees to advance to first party a sufficiency of money to secure said contracts for said trees not to exceed 10 cents per tree, and any and all money so advanced by second party shall be a credit on the purchase price of said trees and treated as part of same.

"All the contracts for said trees shall be taken in the name of J. R. McLin, trustee for the Continental Realty Company, and to be acknowledged according to law and recorded in the proper county clerk's office, the expense of same to be paid by the second party.

"The contracts shall be taken upon the blank form hereto attached, which is made a part of this contract, to include the right of way over the lands on which said trees are located, together with right of way for tram-road. railroads, commissaries and splash-dams, shanties, and all things necessary for the manufacturing and transportation of timber to market or otherwise. Second party shall have the right to enter upon the lands at any and all times in the protection of said trees or for the purpose of removing or manufacturing same into lumber or otherwise, but not to interfere with growing crops. This contract shall continue in force for one year from this date, at which time either party may terminate same by giving the opposite party notice in writing, but all contracts, deeds or other instruments of writing taken in the name of J. B. McLin, trustee for second party under this contract. shall be perpetual.

"The said J. B. McLin, trustee. binds himself to convey said trees by deed of special warranty, upon demand of second party and on the payment of the purchase price as herein stipulated. It is further agreed that the advancement referred to in this contract in cash shall be furnished upon demand of said J. B. McLin.

"Second party ·is to commence taking up and branding said timber as soon as the abstracts, plat and certificate herein provided had been furnished to second party ,and title found to be perfect, and continue to take up same as rapidly as practicable.

"Given under our hands, August 1st, 1903.

                                "McLin & Kilbourn,
                                  "By J. B. McLin.
                                "Continental Realty Co.,
                                  "By C. J. Little, Gen. Mgr."

To this contract there was appended the following acknowledgment:

"The foregoing contract was this day procured to be entered into and executed by McLin and Kilbourn to the Continental Realty Co., by D. B. Redwine, in contemplation of and for the fulfillment of his contract with the Continental Realty Co. of date July the· 24th, 1903.

"This Aug. the 1st, 1903.          Continental Realty Co.,
                                     "By C. J. Little, Gen. Mgr."

Attached to the foregoing contract was a blank form of contract which McLin was to use in taking contracts with others, as specified in the above-mentioned contract between McLin & Kilbourn and the realty company. The plaintiff thereupon elected to take his compensation in money.

To a petition of the plaintiff brought to recover his compensation which stated the particular terms of the written agreement between the plaintiff and defendant and making an exhibit of the same, and further alleging his performance thereof, the defendant interposed a demurrer which failed to state the grounds thereof. Thereupon the plaintiff tendered an amended petition which, against the defendant's objection, the court allowed to be filed. This amended petition seems to differ from the original mainly in stating the substance of the contract, and did not attach the exhibit. To this also there was a general demurrer. This was overruled. Then the defendant answered the petition. The substance of the answer was that the McLin & Kilbourn contract was never accepted by the defendant as a performance of the plaintiff's contract, and, further, that no part of the compensation agreed to be paid to the plaintiff had ever become due and payable. After some further proceedings not necessary to mention, the plaintiff again, by leave of the court, amended his "reformed" petition by striking out a nonessential part of it, and adding to it a count for quantum meruit. But the plaintiff at no time deserted his claim to compensation under his contract. Enough was left of the petition after it was amended by striking out the matter referred to, to constitute a special count upon the contract. It was so understood by the defendant when it moved for an election on which count the plaintiff would elect to proceed as next stated.

The defendant thereupon moved that the plaintiff be required to elect on which cause of action he would seek to recover. This was denied. Thereupon the defendant amended its answer by denying that the plaintiff procured the McLin & Kilbourn contract, denying that his services were rendered to the defendant or at its request, and denying that his services were of any value. The case came on for trial before a jury, and on the conclusion of the evidence the court, on the request of the defendant's counsel, directed a verdict for the defendant. On what ground the request was made, or the instruction given was rested, does not appear. The plaintiff excepted to the charge of the court, and thereon founds an assignment of error. Certain rulings were made excluding evidence offered by the plaintiff to which the plaintiff excepted. It seems to us that, upon the evidence given and tendered, the jury might not unreasonably have found a verdict for the plaintiff. Indeed, as the case stood upon the pleadings, the cause of action stood confessed, and nothing was stated by the answer which constituted any defense, providing the written terms of the transaction are to be construed as we think they should be. The contract between the parties is not denied, the procuration by the plaintiff of the McLin & Kilbourn contract is acknowledged by the general manager, and its acceptance as a performance of the plaintiff's contract by the same manager of the defendant is also ad-

mitted; or, if his indorsement upon the McLin & Kilbourn contract is not such an acceptance, the manager's testimony at the trial proved it. He was the same agent who made and signed for the defendant the contract with the plaintiff, and, no fact appearing to the contrary, the law will presume that he was qualified to attend to and accept the manner of its performance in behalf of the defendant, and will hold the plaintiff justified in assuming that the manager was competent to bind his company in that regard. Mechem on Agency, § 365; Johnson v. Christian, 128 U. S. 374, 9 Sup. Ct. 87, 32 L. Ed. 412. The main stress of the argument of counsel for the defendant is rested on a construction of the contract which we think is erroneous. They contend that the plaintiff agreed to serve the defendant in procuring contracts for a year, and that he was "to use his energy and best ability" during that time in securing contracts for the defendant, and that he assumed a responsibility for the performance, and the value, of the contracts which he was to procure, to the defendant. The contract, as we understand it, does not cast any of these obligations upon the plaintiff.

The plaintiff agreed to procure for the defendant contracts for 300,-000 trees. He did not agree to procure contracts for more than that; but it was agreed that, if he failed to get contracts for that number, he was to be paid the proportion of the commission he was promised, which those he procured would bear to the whole amount of his commission. And he further agreed to use his energy and best ability to procure the contracts at as low a price as he could. The $5,000 was to be paid for getting contracts for the 300,000 trees, and was no consideration for anything else. Of course, if the contracts he was to procure did not conform to the specifications, or if there should be fair doubt of the ability of the contractors to perform the contracts, the defendant might refuse to take them. And it would be entitled to a reasonable time to inform itself. In the present case, however, the defendant accepted the McLin & Kilbourn contract, pursued it, and at length, after it had found that the contract was not going to be performed, made claim to recover damages upon it in a suit with the contractors. The plaintiff did not guarantee the responsibility of parties who would make the contracts. He was bound to exercise good faith in procuring them, and if he knew, or had good reason to believe, that the contracts would not be performed and it turned out so, he would not be allowed to recover the agreed compensation. But if the defendant, with knowledge that the contract had been procured, did not repudiate it, but, on the contrary, sought to enforce it, and get damages for its breach, it would thereafter be precluded from denying its obligation to the plaintiff, unless it should be developed that the plaintiff had acted in bad faith.

As the record does not give any sure information of the reasons for taking the case from the jury, we are left to conjecture what they were. If they rested upon the construction of the contract, which counsel here contended for, we should have no hesitation in holding that the court erred in its direction. But from some of the evidence which was admitted we infer that the court may have thought that

the plaintiff was guilty of a fraud, in that he was himself interested in the contract of sale by McLin & Kilbourn to the defendant, and so in the price at which the trees were agreed to be sold, and that the defendant did not know of this, in which case the defendant contends the plaintiff could not recover. If the facts were as suggested, a grave question would arise whether, after all that had happened, the conditions were such as to justify the conclusion. There was no such defense made by the answer. We are inclined to think, however, and so hold, that, if the plaintiff had an interest in the price which the defendant was to pay for the McLin & Kilbourn trees which they contracted to sell, and that this was not known to the defendant until it ceased to prosecute its claim for damages against McLin & Kilbourn, he cannot maintain his action. There was some testimony which pointed to the existence of such facts, and, if the court was contemplating this as something decisive of the case, it should have admitted evidence tendered by the plaintiff but excluded by the court. Thus the plaintiff, who testified, was asked:

"Whether, after the execution of this contract between you and the Continental Realty Company, did you have any interest whatever in the trees, belonging to McLin & Kilbourn?"

Counsel for defendant objected, but assigned no reason for the objection. The court sustained it and rejected the evidence. This was error, if that question were to be a factor in the case.

Mr. Little, the general manager, was a witness in the case, and gave testimony from which a jury might reasonably infer that he knew of the relations of the plaintiff with McLin & Kilbourn, and that he understood that the trees they were concerned with might be furnished under this contract with the plaintiff. The plaintiff's claim was that he withdrew from his relations with McLin & Kilbourn prior to this contract with defendant and had no further interest in the trees. Enough has been said to show that it was a question of fact whether the plaintiff procured the McLin contract, intending thereby to cover up an interest of his own and make profit thereby. The court could not, as we think, properly withdraw this question from the jury.

There are no other questions which seem to require separate consideration. Some minor points are raised, but they are not likely to be presented on a new trial. Leave should be granted to the parties to reform their pleadings before the new trial shall be had.

The judgment must be reversed, with costs, with direction to award a new trial.