BRUNOT, J.
Plaintiff sued the defendant for $8,200, represented by 41 rent notes of $200 each, and provisionally seized the property of defendant found upon the leased premises. From a judgment dissolving the writ of provisional seizure, with reservation of defendant’s right to sue for damages for the illegal issuance thereof, the plaintiff has appealed.
The record discloses that plaintiff leased the property described in the petition to defendant for 66% months, from March 15, 1921, to September 30, 1926.
The lease is dated March 5, 1921. It contains all of the usual clauses found in contracts of lease, including the maturity of all unpaid notes upon the nonpayment of any one of them at maturity, but the clause therein fixing the due date of the successive monthly payments of rent differs from the due date appearing on the face of the notes. The clause referred to is as follows:
“The present lease is made for and in consideration of a monthly rental of one hundred and fifty dollars per month for the first Six and one-half months and two hundred dollars per month for the following sixty months, payable monthly, as evidenced by sixty-seven (67) rent notes, bearing even date herewith, drawn by the lessee and made payable to Arthur E. Cambas, the first on the first day 01 April, 1921, and the others on the first day of each and every succeeding month thereafter, except the last mat-wring note, which is made payable on the last day of the lease, fixed." (Italics ours.)
Under the terms of the contract of lease the rent was not payable in advance; the *494 rent notes were to bear date of March 5, 1921, and all of the rent notes, except the last maturing note, were payable on the 1st day of the month succeeding the month for which the rent had accrued.
The record discloses that none of the notes were dated March 5, 1921, but all of them are dated March 31, 1921. It also discloses that none of the notes are made payable on the 1st day of the month as stipulated in the contract of lease, but all are made payable on the last day of each month, at the Third District Branch of the Whitney Central Trust & Savings Bank. From the testimony of Mr. McEnerny, the note clerk of that bank, it appears that very few of the notes were paid at the bank. The witness says:
“Mr. Cambas always came in and got the notes and collected them himself; they were always paid 15 or 20 days after they were due.”
On May 26, 1923, plaintiff’s attorney notified defendant, by registered letter, that no further extensions would be granted, and, if the rent was not promptly paid at maturity, payment for the balance of the rent for the unexpired term of the lease would be demanded. The return receipt shows that defendant received this letter on May 29th, 1923, and on June 1, 1923, defendant mailed its check for $200 to the Third District Branch of the Whitney-Central Trust & Savings Bank, in payment of the rent due plaintiff for the month of May, 1923. The bank received the check on the morning of ■June 2, 1923, and immediately gave the plaintiff credit therefor. A day or two later the note clerk of the bank, after an unsuccessful attempt to get in touch with the plaintiff, sent a cashier’s check for $200 to the defendant. Defendant’s counsel immediately returned this check to the bank and the note clerk recredited the amount to the plaintiff.
It is not denied that, quoad the collection of the notes, the bank was plaintiff’s agent, but it is contended that plaintiff withdrew the notes from the bank a few minutes before 3 o’clock p. m. on the 31st day of May, 1923, and that his withdrawal of the notes' terminated this agency. The record does not disclose that the plaintiff intimated to any official of the bank that the agency was terminated; and, in view of his previous course of business with the bank concerning these notes, the mere withdrawal of them was not in itself sufficient to put the bank on guard or to warrant inquiry by it, because, as is testified to by the note • clerk, the plaintiff had repeatedly withdrawn the notes of defendant from the bank, and, except in a few instances, he had collected the notes himself.
The notes on their face and as stipulated in the contract are payable at the Third District Branch of the Whitney-Central Trust & Savings Bank. The defendant had dealt with the bank ^s plaintiff’s agent, and plaintiff does not pretend that defendant had notice of a termination of that agency.
“The act of revocation, so far as the agent is concerned, becomes operative from the time he has actual notice thereof; notice to third parties without notice to the agent wiE not effect a revocation as to him.” Am. & Eng. Ency. of Law (2d Ed.) vol. 1, p. 1220.
“On the other hand, although notice is given to the agent, the revocation is effective as to third parties only when it is made to them, and acts of the agent when dealing with third parties without notice are binding on the principal.” Am. & Eng. Ency. of Law (2d Ed.) vol. 1, p. 1220; Lanusse v. Barker, 3 Wheat. (U. S.) 101, 4 L. Ed. 343; Johnson v. Christian, 128 U. S. 374, 9 Sup. Ct. 87, 32 L. Ed. 412; Harris v. Cuddy, 21 La. Ann. 388.
It is contended that defendant was notified on May 29, 1923, that if it defaulted in the payment of any installment of tíre rent at its maturity the entire rent for the unexpired term of the lease would be demanded; that thereafter the defendant failed to pay the rent for the month of May on the last day of that month; that this default in payment matured all of the outstanding rent *496 notes, and authorized the seizure of the property on the leased premises; and that the payment of one month’s rent to the bank by check, dated June 1, 1923, was not a payment of. the amount then due the plaintiff, but, in view of'the previous notice to defendant, it was an act of bad faith on defendant’s part.
We do not think that the record justifies plaintiff’s contention. The clause of the lease quoted on the first page of this opinion seems to refute it. The- clause referred to provides that the installments of rent shall be due and payable on the 1st day of each succeeding month during the term of the lease, except for the last month thereof. If the provisions of the lease are to govern, and we think they should in this case, the rent for the month of May was due on June 1st, and defendant mailed a check to the bank on that day for th'e full amount of the rent then due. We think the lease should govern in this case because the plaintiff is not an innocent third holder of the rent notes for value, but he is a party to the contract of lease. He is suing upon this contract and upon the notes supposed to be identified with it. He cannot invoke one provision of the contract in aid of his action and repudiate those provisions of the contract which sustain the defense to the suit and seizure.
It may be noted that the lease was prepared in duplicate, and defendant held only a duplicate of the contract for its information and guidance. Therefore,' and regardless of what may appear on the face of the note, the mailing of the check on June 1, 1923, for the month’s rent which the contract provided was dúe that day does not, in our opinion, indicate bad faith. It appears that plaintiff had repeatedly accepted the payment of the rent two or three weeks after the notes were due. Craighead v. Connely, 124 La. 945, 50 South. 804.
Under the circumstances disclosed by this record, and for the reasons stated, we are of the opinion that the judgment of the lower court is correct, and it is therefore affirmed at appellant’s cost.