INDUSTRIAL TRUST COMPANY, Trustee, *vs.* ELIZABETH M. COLT *et al.*

FEBRUARY 17, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J. The above entitled proceeding is a bill of interpleader brought by the complainant as trustee under a certain indenture of trust, executed by the late Samuel P. Colt, as settlor, on December 30, 1908. The respondents are, on one hand, Elizabeth M. Colt, widow of Samuel P. Colt, who by reason of unsoundness of mind is under guardianship of her person and estate, and whose interests are represented in this suit by her guardian and by a guardian *ad litem*, and on the other hand, the two sons of Samuel P. and Elizabeth M. Colt. The bill avers the adverse claims which have been made by these two groups of respondents to a certain portion of the income of the trust estate created by said indenture, and their respective threats of suits to enforce said claims.

By an interlocutory decree the complainant was directed to pay into the registry of the Superior Court all those portions of the income of said trust estate which had accrued or should accrue during the pendency of the cause, and as to which the adverse claims of the respondents relate. In said decree the complainant was dismissed, and the parties respondent were ordered to interplead with each other upon their adverse claims.

The cause was heard before a justice of the Superior Court upon the answers of the respondents and the proof. Thereafter the justice filed his decision in which he held that the adverse claims of the respondents did not present a situation warranting interpleader; that the claim of the respondents Russell G. and Roswell C. Colt was not one which they might urge against the complainant but was a claim against the respondent Elizabeth M. Colt. Thereafter the justice entered a final decree dismissing the bill on that ground. The final decree did not, however, order the fund which had been paid into the registry of the court in accordance with the interlocutory decree to be returned to the complainant but to be paid to the respondent Elizabeth M. Colt.

The cause is before us upon the appeal of each of the adversary parties respondent. The reasons of appeal of

each assign error in the decision of said justice that interpleader was improper.

For his conclusion the justice relied upon the decision in *Stiness* v. *Henderson*, 44 R. I. 514. In *Stiness* v. *Henderson*, *supra*, the complainant had paid two funds into court. By his answer it appeared that the claim of one of the respondents was solely to one of these funds, to which fund the answer of the other respondent clearly indicated that he had no right. The claim that he was making was not against either fund but against the other respondent for damages for breach of contract. Following *Greene* v. *Mumford*, 4 R. I. 313 and *Boss* v. *Lederer Realty Corporation*, 43 R. I. 549, the bill of interpleader was dismissed. The suit at bar is distinguishable from *Stiness* v. *Henderson*. The claim of each of the respondents here is for the same fund, and the claim of either, if it had been established, would have warranted a recovery against the complainant. The complaint and the answers set out a situation which permits an interpleading bill to be maintained. The complainant, threatened with the respective suits of the respondents, stands indifferent as a stakeholder; each group of respondents is claiming the same fund, and the claim of each is derived from Col. Colt through the same transaction. *Providence Bank* v. *Wilkinson*, 4 R. I. 507. Our conclusion on this phase of the case is that the bill should not have been dismissed. We will pass upon the matter in controversy between the respondents.

The circumstances in which the adverse claims of the parties respondent arise are as follows: Previous to December 30, 1908, Col. Samuel P. Colt and his wife, this respondent Elizabeth M. Colt, had been living apart. On that date Col. Colt as settlor and John J. Watson, Jr., as trustee executed the indenture in question by which Col. Colt transferred to Mr. Watson securities of large value to hold in trust for various purposes in the indenture set forth. The third paragraph thereof is as follows: "Third. During the joint lives of Elizabeth M. Colt, wife of the settlor, and

Russell G. Colt and Roswell C. Colt, sons of the settlor, the trustee shall pay from the net income, if sufficient, unto the said Elizabeth M. Colt the sum of seventeen thousand (17,000) dollars annually and as nearly as may be in equal quarterly installments." On October 31, 1910, Mr. Watson resigned as trustee under the indenture and on the same day the complainant became trustee in succession and has so continued to the present time. The original trustee and the complainant as successor, respectively, paid from the income of the trust fund the sum of $17,000 annually to Mrs. Colt, or upon her order, down to the time of the appointment of the respondent Alfred G. Chaffee, Esq., as guardian of the person and estate of Mrs. Colt. From the sum so received by Mrs. Colt she paid to each of the sons of Col. Colt and herself, Russell G. and Roswell C. Colt, the sum of $3,500 annually from the date of the indenture down to June 18, 1913. On that day she gave the following notice and order to the complainant: "Providence, R. I. June 18, 1913. To Industrial Trust Company, Trustee. Beginning July 1, 1913, in place of previous payments to me as provided by the trust deed of December 30, 1908, please pay from the sum of seventeen thousand dollars, payable to me in quarterly installments, the following—to Russell G. Colt and Roswell C. Colt, each, the sum of $291.66 on the first business day of each and every month, making an aggregate of $3,500 to be paid to each of them annually and the balance of the said sum of $17,000 (viz. $2,500 quarterly) deposit in my general account with your company. This order to take the place of all preceding directions relative to said payment of said $17,000 which I hereby cancel. (Signed) Elizabeth M. Colt." Thereafter, in compliance with the direction contained in said instrument, from the sum of $17,000 payable annually to Mrs. Colt under the terms of the third paragraph of the indenture the complainant paid the sum of $3,500 annually to each of said sons down to the time of the appointment of said guardian on December 30, 1922. Immediately after

that date said guardian notified the complainant not to make further payments to said sons in accordance with the instrument of June 18, 1913, and demanded that the full sum of $17,000 be paid to him as part of the estate of his ward and threatened to bring suit in behalf of his ward to enforce said claim.

Notwithstanding the unsoundness of mind of their mother said sons claimed that the order contained in the instrument of June 18, 1913, was still operative and demanded that payments to them under said instrument be continued; and threatened to bring action against the complainant for the recovery of the same. In these circumstances the complainant's bill was filed and the interlocutory decree was entered directing the respondents to interplead.

The respondents, Mrs. Colt, her guardian and guardian *ad litem*, base their contention upon the absolute nature of the provision of paragraph three of the indenture directing the annual payment of $17,000 to Mrs. Colt, and contend that the court should regard any payments from said sum by Mrs. Colt to her sons as gratuities and not as the performance of an obligation on her part. It is the claim of the respondent sons that the annual payment of $17,000 to their mother during the joint lives of Mrs. Colt and said sons was upon the condition that $3,500 of that sum be turned over by her to each son; that the payment of $7,000 annually included in the $17,000 paid by the trustee to Mrs. Colt was for their benefit; and that the action of Mrs. Colt, through her guardian, in seeking to appropriate to her own use said sum of $7,000 annually amounted to constructive fraud which will raise up a constructive trust in favor of the sons.

At the trial in the Superior Court the respondent sons were permitted to introduce evidence tending to support their claim that the sum of $7,000 per year included in the sum of $17,000 paid to their mother by the trustee under the terms of the indenture was received by her solely for their benefit in accordance with an agreement between her and

the settlor. The respondent guardian and guardian *ad litem* for Mrs. Colt objected to the admission of such evidence by the justice presiding and now urge that it should be disregarded by us in the determination of these appeals. The guardians claim that the admission of this evidence, tending to vary the absolute terms of the trust indenture, is an unwarranted violation of the parol evidence rule. In the consideration of a claim of fraud, by reason of the perpetration of which it is sought to impose a constructive trust upon a gift absolute in its terms, a court of equity will not be restrained by the parol evidence rule, the statute of wills or the statute of frauds; and will not permit the provisions of either, designed to prevent fraud, to be used for its accomplishment. Notwithstanding the terms of the indenture the sons may by parol show an express or implied undertaking on the part of their mother for their benefit as a part of the inducement for the gift to her by the settlor of $17,000 per year. In declaring a trust *ex maleficio* the court said in *Ahrens* v. *Jones*, 169 N. Y. p. 555, "Such a trust does not affect the deed, but acts upon the gift, as it reaches the possession of the grantee, and the foundation for the trust is that equity will then interfere and raise a trust in favor of the persons intended to be benefited in order to prevent a fraud." If an undertaking on the part of Mrs. Colt to take $7,000 of said $17,000 per year for the benefit of the sons is satisfactorily established, then equity will declare that an obligation was placed upon the conscience of Mrs. Colt to perform it. If in violation of that obligation she attempts to take said $7,000 per year and use it as her own, equity will as to said sum make her a constructive trustee for the sons. If such conscientious obligation is established the act of the guardian of Mrs. Colt's person and estate in disregard of that obligation is imputable to her and equity will grant relief to the sons in the situation thus presented. It is not necessary for the sons to establish a fraudulent purpose in Mrs. Colt in procuring the apparent gift to her of the $7,000 per year. Fraud may be

found from a subsequent attempted personal advantage in retaining for herself that which she was bound in conscience to transfer to another. *Gilpatrick* v. *Glidden*, 81 Me. 137; *Amherst College* v. *Ritch*, 151 N. Y. 282; 1 Perry on Trusts, p. 289, n. (a). The respondent guardians of Mrs. Colt have pointed out in their brief that the cases, in which constructive trusts have been imposed, relate to legacies and devises in which a testator has made a gift which is outright upon its face, relying upon an undertaking by the legatee or devisee to receive the same in whole or in part for the benefit of others. The principle is equally applicable to gifts and dispositions of property, which are not testamentary. *Larmon* v. *Knight*, 140 Ill. 232; *Giffen* v. *Taylor*, 139 Ind. 573; *Fox* v. *Fox*, 77 Neb. 601; *Ahrens* v. *Jones*, 169 N. Y. 555; *Hirsch* v. *Auer*, 146 N. Y. 13; *Goldsmith* v. *Goldsmith*, 145 N. Y. 313.

To obtain the relief which they seek in their answer the respondent sons must support their claim by clear and convincing evidence. In our opinion they have met that requirement. At the trial in the Superior Court these respondents, over the objection of said guardians, were permitted to introduce statements made by the settlor to the respondent Roswell C. Colt soon after the execution of the indenture of 1918, to the effect that the settlor had made a trust agreement by which Roswell would be paid $3,500 a year through his mother, and like statements made by the settlor to Roswell on subsequent occasions. Evidence was also admitted of statements made by the settlor to the trustee, Mr. Watson, at the time of making the indenture, to the effect that $7,000 of the $17,000 to be paid annually under the trust to Mrs. Colt was for the benefit of their sons, these respondents. Also a provision of the will of the settlor executed in 1917 and probated in 1921, which tended to support the claim of the respondent sons, was admitted in evidence. We are of the opinion that evidence of statements made by Col. Colt out of the presence of Mrs. Colt, and also the provisions of his will, are hearsay and should

not be received to cut down the apparent gift to Mrs. Colt contained in the indenture. We shall disregard that evidence in our consideration of these appeals.

The provisions of the indenture of 1908 as a whole tend to support the claim of the respondent sons. Under the third paragraph quoted above the payment of $17,000 to Mrs. Colt was to continue during the joint or concurring lives of Mrs. Colt and her two sons. Under the fourth paragraph, in case of the death of Mrs. Colt during the life of the settlor, the trustee was to pay from the net income the sum of $3,500 annually to each son during his natural life. Under the fifth paragraph upon the death of either son during the lifetime of Mrs. Colt and the lifetime of the settlor the annual payment of $17,000 to Mrs. Colt "shall be reduced by the sum of $3,500 as each of said sons shall so decease." The indenture strongly indicates that the payment to Mrs. Colt of $7,000 contained in the $17,000 per year had a relation to some fixed obligation on her part towards the sons and that as to each son the continued payment to Mrs. Colt of $3,500 per year depended upon the continued life of that son.

There was also in evidence a written separation agreement between Col. and Mrs. Colt, executed by each on January 20, 1912, whereby Col. Colt made further provision for Mrs. Colt during her life in the sum of $10,000 annually. In the eleventh paragraph of this separation agreement it is recited: "And whereas by a certain deed of trust made by the party of the second part, (Col. Colt) to John J. Watson, Jr., dated the thirtieth day of December, 1908, under which Industrial Trust Company, of said Providence, is now trustee, the party of the second part has secured to the party of the first part (Mrs. Colt) the income to the amount of ten thousand dollars per year from certain securities." This provision of the separation agreement indicates the understanding of each as to the extent of the beneficial interest of Mrs. Colt in the annual payment of $17,000 under the indenture of 1908.

Mrs. Colt by reason of her mental condition was unable to give evidence at the trial. All of the evidence presented by the respondent sons was uncontradicted. The original trustee, Mr. Watson, testified concerning the payment by him of $17,000 annually to Mrs. Colt, as follows: "It was paid to her with the understanding that she was to pay $3,500 to each of the sons and to retain $10,000 for herself." The respondent guardians did not cross-examine Mr. Watson. The reasonable intent of this testimony is that Mrs. Colt knew that the payments were made to her upon this condition and that she so received them.

At the time of the indenture the son Roswell was nineteen years of age and a student at Harvard University; the son Russell was twenty-six years old and lived with his father in New York. Previous to the making of the indenture Col. Colt had paid the expenses of the son Roswell at school and college and had supplied him with spending money; and had also made a regular allowance to the son Russell. Upon the making of the indenture these payments and allowances from Col. Colt for the benefit of the sons ceased, and Mrs. Colt began to pay the expenses of Roswell and to make a monthly payment to the son Russell of $291.66, the same being a one-twelfth part of $3,500. In the early part of 1909, soon after the execution of the indenture, Mrs. Colt stated to the son Roswell that a trust had been made by his father for the benefit of herself and the two sons, under which each son was to receive $3,500 annually. She also on several occasions showed to the son Roswell an account of her expenditures for his benefit. When he became of age she showed this account to him and as it appeared thereon that the payments made for his benefit up to that time were slightly less than $3,500 per year, she paid that balance to him. Thereafter until June 18, 1913, she sent to him a check for $291.66 on the first of each month. After June 18, 1913, and until the appointment of the guardian for Mrs. Colt, each son received from the complainant trustee a monthly payment of $291.66 in accordance with the direc-

tion contained in the above quoted order of that date from Mrs. Colt to the complainant.

In addition to the evidence presented at the trial in the Superior Court there have been filed with the papers in the case two letters of Mrs. Colt to Mr. Watson which by stipulation of counsel are to be considered by us in the determination of these appeals. The first letter is of January 14, 1909, fifteen days after the date of the indenture, in which Mrs. Colt acknowledges the receipt of a copy of the "Deed of Trust" and then requests the trustee to make the quarterly payments to her in advance. In the course of the letter she says "as the arrangement now stands I have to advance $500 or over a month to the boys. Now how shall I do this if you do not pay me?" In the latter part of the letter she says, "Please put the matter before Mr. Colt and advance enough money—if necessary out of the estate— to start us (the boys and I) fair and square on Feby first." Six days later, on January 20, 1909, she wrote the second of the letters. In this she asks Mr. Watson not to take up with Col. Colt the matter of making her quarterly payments in advance and says, "I will sell one or two bonds and begin the new plan out of debt and with money on hand to advance to the boys." The inference is warranted that in these letters Mrs. Colt was referring to the payments which she was to make to her sons as an obligation which she had assumed under the "arrangement" or "the new plan," arising out of the indenture.

We find it clearly established that of the $17,000 annual payment made to Mrs. Colt under the trust indenture the settlor intended that $7,000 should be taken by her for the benefit of the sons; that Mrs. Colt knew of that intention in the settlor and received the payments made to her with that condition attached, that she undertook and impliedly, at least, promised to carry out that intention. The action of the guardian in attempting to appropriate the sum of $7,000 per year as a part of the estate of Mrs. Colt raises the constructive trust which the respondent sons claim.

We have thus passed upon the principal question as to which all of the respondents desire a determination. The sum of the payments made into the registry of the court by the complainant should not be paid to the guardian as part of Mrs. Colt's estate. The beneficial interest in the same is in the respondent sons.

The next question presented arises upon the claim of the respondent sons that the order from Mrs. Colt to the complainant of June 18, 1913, is irrevocable, at least by anyone now competent to act, and that in equity they are still entitled to receive from the complainant the monthly payments provided for in the order.

As to the money paid by the complainants into the registry of the court we should order an equitable distribution of the same which in the circumstances would require its payment to the respondent sons. We will however pass upon the claim of the sons that after the mental incapacity of their mother they were entitled to demand from the complainant a continuance of the payments under said order of Mrs. Colt. Mr. Watson testified that Mrs. Colt had told him that by reason of a tendency towards extravagance in the boys "both Mr. Colt and Mrs. Colt felt that if this money was paid through the mother she would have an influence over them so that she could hold the money back if they did not behave." He further testified that the power of restraint thus given to her in making payments to the sons "was personal to Mrs. Colt." Whatever the nature and extent of the discretion given to Mrs. Colt she never exercised it to withhold monthly payments from either son, and according to the testimony of Mr. Watson a trustee succeeding Mrs. Colt could not exercise that discretion. It is the general rule that the death or insanity of a principal revokes the authority of an agent, or in case of insanity at least suspends the authority during the continuance of mental incapacity. It is an exception to the general rule that when the authority of an agent is coupled with an interest the death or insanity of the prin-

cipal does not operate as a revocation or suspension of the authority. In the case of the death of a principal it has been held that while usually the power and the interest are vested in the same person that is not indispensable. A power given to one to be exercised for the benefit of another who has an interest is irrevocable. 1 Mechem on Agency, § 661; *Durbrow* v. *Eppens*, 65 N. J. L. 10; *American Loan & Trust Co.* v. *Billings*, 58 Minn. 187. Relying upon the reason underlying these authorities the argument is not without force that during the continuance of the mental incapacity of Mrs. Colt, while the beneficial interest in the subject of the agency is solely in the respondent sons, it should be held that the agency of the complainant was so coupled with the interests of the respondent sons that the insanity of Mrs. Colt did not work a revocation of the agency. We do not find the rule, that the power of an agent when coupled with an interest is unrevoked by the death of the principal, to be applied, save in cases where the authority was irrevocable by the principal during his life. The authority of the complainant as her agent was clearly revocable by Mrs. Colt if she had continued sane. We are of the opinion that we would not be justified under established principles of agency in treating that authority as irrevocable during her insanity notwithstanding the interest of the sons. That interest can be fully protected by the appointment of this complainant or some other suitable person as a new trustee to administer the trust which has been charged upon Mrs. Colt, until she has been declared restored to soundness of mind, without the discretion, however, which may have been in her to withhold monthly payments from the sons.

The decree of the Superior Court is reversed.

On March 2, 1925, the parties may present a form of decree in accordance with this opinion.

*Edwards & Angell*, for complainant.

*Comstock & Canning*, for Alfred G. Chaffee, Guardian, and Andrew P. Quinn, Guardian *ad litem*.

*Alexander L. Churchill, Edward M. Brennan, Andrew P. Quinn,* of counsel.

*Fitzgerald & Higgins, Edward L. Leahy,* for Russell G. and Roswell C. Colt. *William H. Camfield,* of counsel.