Jeannine BERNIER, Plaintiff, Appellant,

v.

**THE UPJOHN COMPANY,**
Defendant, Appellee.

No. 97–1957.

United States Court of Appeals,
First Circuit.

Heard March 6, 1998.

Decided May 26, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied July 14, 1998.

David J. Fine with whom Dangel, Donlan and Fine LLP was on brief, for appellant.

William A. McCormack with whom Richelle S. Kennedy and Bingham Dana LLP were on brief, for appellee.

Before BOUDIN, Circuit Judge, BOWNES and CYR, Senior Circuit Judges.

BOUDIN, Circuit Judge.

Jeannine Bernier appeals from the district court's grant of summary judgment in favor of The Upjohn Company. Because we agree with the district court that her suit was barred by the statute of limitations, we affirm.

In December 1978, when Bernier was 18 years old, she was diagnosed with clear cell carcinoma of the vagina. Her physician, Dr. Robert Knapp, suspected that the cancer might have been caused by her mother's ingestion of diethylstilbestrol (commonly known as "DES") while pregnant. During a meeting with Bernier and her mother, Dr. Knapp asked Bernier's mother whether she had taken DES while pregnant with Bernier; she replied that she had not.

In January 1979, Bernier underwent a major operation for treatment of the cancer. Ten months later, on November 1, 1979, Dr. Knapp wrote Bernier a letter suggesting that she consider joining a planned class action law suit—presumably against manufacturers—on behalf of women suffering from complications due to their mothers' use of DES. Bernier took no action upon receiving this letter, nor did she discuss the matter further with Dr. Knapp.

Fifteen years later, in 1994, Bernier consulted an attorney for the first time, after she heard of a verdict awarding plaintiffs in a DES case several million dollars. Her attorney then unearthed a hospital record belonging to Bernier's mother that bore the annotation "Stilb 25 per schedule." Believing "Stilb" to signify DES (a glance at the full name of the drug explains why), Bernier sued Upjohn in the Massachusetts Superior Court on April 10, 1995, asserting theories of negligence and breach of warranty. Upjohn removed the case to the district court on grounds of diversity.

After discovery, Upjohn moved for summary judgment. Upjohn argued that the suit was barred by the statute of limitations, and also that Bernier could not prove that her mother had actually ingested DES made by Upjohn rather than by another DES manufacturer. For reasons recounted below, Bernier did not file a timely opposition. On June 9, 1997, the district court granted the motion "for the reasons set forth in [Upjohn]'s memorandum." After failing to win reconsideration, Bernier now appeals.

■ Bernier does not dispute that Massachusetts law prescribes a limitations period of three years. See Mass. Gen. Laws ch. 106, § 2–318 (breach of warranty claims); *id.* ch. 260, § 2A (negligence claims). Generally, negligence claims arise at the time of the injury, and breach of warranty claims at the time of the breach. *Cambridge Plating Co.*

v. Napco, Inc., 991 F.2d 21, 25 (1st Cir.1993). Admittedly, Bernier's complaint was filed well over three years after Bernier's injury and the alleged breach.

■ Nevertheless, various judicial doctrines temper statutes of limitations, and Bernier here invokes the Massachusetts "discovery rule." Under this doctrine, the statute of limitations does not run against a claim until "an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." See Bowen v. Eli Lilly & Co., 408 Mass. 204, 557 N.E.2d 739, 741 (1990). Put another way, the statute runs from the point at which a reasonably prudent person in the plaintiff's position, "reacting to any suspicious circumstances of which he might have been aware," would have discovered that another party might be liable for her injury. Malapanis v. Shirazi, 21 Mass.App. Ct. 378, 487 N.E.2d 533, 537 (1986).

This doctrine effectively imposes a duty of reasonable inquiry on an injured party seeking to avoid the statute of limitations. As soon as one is on notice of an injury, or at least one that may have been caused by a third party, one must act reasonably in considering and investigating this possibility. Cf. Wolin v. Smith Barney Inc., 83 F.3d 847, 852–53 (7th Cir.1996) (Posner, C.J.). It is assumed that a reasonable investigation, backed by discovery, will unearth the necessary facts to support a claim within the limitations period. If not, the plaintiff can fall back on an equitable tolling doctrine yet to be discussed.

Dr. Knapp's letter to Bernier on November 1, 1979, amply put Bernier on notice that her cancer might have been caused by a third party. Dr. Knapp wrote: "you have had clear cell carcinoma, and it is my opinion that this is related to DES exposure in utero.... Although I am not a lawyer I feel that you certainly have a claim and since I have taken care of you medically I feel responsible in offering you any help that I can give to you." It would be hard to imagine a clearer warning of a likely claim.

Bernier argues that she was not on notice of her claim because her mother had expressly denied having taken DES, but Dr. Knapp's letter came after this denial, reasonably alerting Bernier to the possibility that her mother had been mistaken. Bernier also says that she read the letter as a form sent to several of Dr. Knapp's patients, and yet the letter is addressed to Bernier personally. Whatever her subjective belief, as an objective matter Bernier was put on notice of a potential claim, and a rational jury could not find otherwise.

■ However, Bernier has an alternative statute of limitations argument, namely, that even a diligent search made in or around 1979 would not have discovered the vital hospital record bearing the "Stilb" notation. Under Massachusetts law the doctrine of equitable tolling suspends a running statute of limitations if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit. See Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 682 N.E.2d 624, 635 (1997). Massachusetts cases are unclear as to whether plaintiffs who make no effort to investigate may nonetheless benefit from the doctrine of equitable tolling. Cf. Wolin, 83 F.3d at 852–53 (suggesting that they cannot, absent deliberate concealment by the defendant).

■ In any event, the record does not suggest that the "Stilb" document was in some way concealed or otherwise inaccessible to Bernier in 1979. Cf. Friedman v. Jablonski, 371 Mass. 482, 358 N.E.2d 994, 997 (1976). Nor does Bernier offer any rationale for concluding that her attorney could not have discovered it in 1980 as readily as he did in 1994. A party seeking to toll the statute must at the very least show that the information could not have been found by a timely diligent inquiry, a showing Bernier does not even attempt on the existing record.

■ In her final argument, Bernier asks in effect that we enlarge the record by considering her belated opposition to summary judgment. In this regard, she asserts that the district court erred in denying the motion to reconsider, which was filed together with her summary judgment opposition two days after summary judgment was granted. We hold that the district court did not abuse its discretion, the customary standard applied

on review of such a ruling. *Mendez v. Banco Popular de P.R.*, 900 F.2d 4, 7 (1st Cir.1990).

The chronology is important. After extending the discovery deadline twice, the second time over Upjohn's opposition, the district court set April 15, 1997, as the due date for the summary judgment motion and April 29 as the date for an opposition, with a hearing set for June 9. Upjohn filed on time and the court then sent out a notice confirming the hearing date. By stipulated order, Bernier's time to oppose was then extended to May 13.

Instead of filing her opposition, Bernier filed a motion on May 12 asking for a month's extra time to oppose the motion and four more months to complete expert discovery. The court denied the requests and Bernier's counsel received notice of the denial on May 27 or 28. Bernier's counsel did not file the opposition with a request to accept it late, apparently because the opposition was not yet complete. And on June 9, when the case was called for hearing, Bernier's counsel did not appear. The court then granted Upjohn's summary judgment motion and recessed.

Bernier's counsel says that he arrived late and says that he had telephoned the courtroom clerk to say that he would be late. He also says that the burden of other work required the extension and that he expected it to be granted in light of prior extensions. But in all events no opposition to summary judgment was filed until June 11, together with a motion for reconsideration. In a thoughtful three-page memorandum, the district court denied the motion.

Given the latitude normally allowed to district courts on both scores—schedule setting and reconsideration motions—no claim of abuse of discretion is even arguable. Contrary to counsel's suggestion, the district court imposed no unjust "sanction," *cf. Robson v. Hallenbeck*, 81 F.3d 1, 2–3 (1st Cir. 1996), for the failure to file the opposition: it simply decided the summary judgment motion on the merits, taking the movant's facts as uncontested, just as the governing rules warn will occur absent an opposition. Fed. R.Civ.P. 56(e); D. Mass. Loc. R. 56.1.

We cannot accept the notion that the grant of prior extensions entitles counsel to suppose that any additional extension will be granted as a matter of course. Not only would this undermine any kind of procedural discipline, but it is well known that courts become more reluctant to extend deadlines as scheduled court proceedings loom. Further, Bernier's counsel did not even attempt to file the opposition in the period after notice of the denial was received and before the scheduled hearing.

We add—not in mitigation of counsel's omission but out of concern for Bernier's feelings—that the belated opposition would not likely have altered the result on the statute of limitations defense. On this issue, the main thrust of the opposition is evidence that by 1979, the doctor who had treated Bernier's mother during her pregnancy had retired and his records had been disposed of. Whether the doctor could still have been interviewed in 1979 is unclear.

However this may be, there is no explanation given why the due diligence that in 1994 uncovered the "Stilb" notation in the hospital records would not also have uncovered it in 1979. Without such a showing, Bernier could hardly prove that her mother's use of DES was effectively not discoverable in 1979. While counsel's delay thus seemingly had no effect in this case, lawyers faced with deadlines in the future should treat this case as a warning.

*Affirmed.*