Eleanor C. SCHOCK, Plaintiff,

v.

UNITED STATES of America; and Federal Deposit Insurance Corporation, in its capacity as deposit insurer, and in its capacity as Receiver of Old Stone Bank FSB, Defendants.

C.A. No. 97–530L.

United States District Court,
D. Rhode Island.

Oct. 14, 1998.

John D. Deacon, Medeiros, Karmen & Sanford, Inc., Providence, RI, for Plaintiff.

Z. Scott Birdwell, Federal Deposit Insurance Corp., Washington, DC, Joseph F. Shea, David J. Lawson, Nutter, McClennen & Fish, LLP, Boston, MA, for Defendants.

## *MEMORANDUM AND ORDER*

LAGUEUX, Chief Judge.

Eleanor C. Schock ("Plaintiff") is the daughter and only heir of Ragnar Miller, who died on May 6, 1993. Plaintiff is the assignee of all claims of the Estate of Ragnar Miller (the "Estate"). Attorney Pat Nero was Miller's attorney, and Miller, while living, had executed a broad power of attorney to Nero that included the power to withdraw money from Miller's bank accounts.

At the time of his death, Miller had money deposited in the Old Stone Federal Savings Bank ("Old Stone"), including $23,331.72 in a savings account. Old Stone was then a bank being run under the conservatorship of the Federal Deposit Insurance Corporation (the "FDIC"). The predecessor institution, Old Stone Bank, a Federal Savings Bank, had been closed by the FDIC on January 29, 1993. Old Stone, in turn, was closed and liquidated on July 8, 1994.

On August 27, 1993, Nero withdrew $23,331.72 from Miller's savings account to fund a bank check payable to himself. He, then, deposited the proceeds in his own account. On October 15, 1993, Nero was appointed executor of the Estate, but at the time of the withdrawal, he was neither an actual agent of Miller nor executor of the Estate.

Plaintiff's Amended Complaint alleges three counts: Count I against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674 (the "FTCA"); Count II against the FDIC ("FDIC–Receiver") as a conservator of Old Stone and operator of the bank on August 27, 1993; and Count III against the FDIC ("FDIC–Corporate") as the insurer of Old Stone's deposits.

This Court currently has before it four motions, and it will address each in turn. First, the United States moves to dismiss Count I because the claim is barred by the statute of limitations. This motion is denied. Second, plaintiff moves for summary judgment on Count II. This motion is denied. Third, FDIC–Corporate moves to dismiss Count III because there was no insured deposit in Old Stone when the bank closed. This motion is granted. Fourth, plaintiff moves to amend her complaint to add a negligence count against the United States, and the United States objects because plaintiff did not allege negligence in her administrative claim. This motion is granted.

## I. United States Motion To Dismiss Count I

The issue before this Court is whether the discovery rule applies to a conversion claim brought under the FTCA.[1] The FTCA bars tort claims unless the claim is presented in writing to the appropriate federal agency within two years after such claim accrues. *See* 28 U.S.C. § 2401(b) (1998). The United States argues that the claim accrued in August 1993 when plaintiff alleges the money was improperly withdrawn from Miller's account by Nero. Plaintiff argues that the discovery rule delayed accrual of the statute of limitations until December 1996, when plaintiff discovered the alleged conversion.

### A. Legal standard for a motion to dismiss

■ In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Discussion

■ Claims under the FTCA can only be brought under the terms and conditions of that Act. *See McNeil v. United States*, 508 U.S. 106, 111, 113 S.Ct. 1980, 1983, 124 L.Ed.2d 21 (1993). One such condition is that a claim must be filed within two years of accrual:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.

28 U.S.C. § 2401(b). Nero withdrew the $23,331.72 on August 27, 1993. Plaintiff filed her administrative claim under the FTCA on July 2, 1997. Thus, the only way for plaintiff's claim to survive is if the law allows a tolling of the statute of limitations and that tolling extended past July 2, 1995.

#### 1. The law of the Federal Tort Claims Act

■ Sovereign immunity is jurisdictional, so this Court's jurisdiction is defined by the United States' consent to be sued. *See FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). However, the Supreme Court has ruled that the statute of limitations is not jurisdictional, and that statute is subject to equitable tolling. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (holding that equitable tolling doctrine applies to suits against the United States); *Schmidt v. United States*, 498 U.S. 1077, 111 S.Ct. 944, 112 L.Ed.2d 1033 (1991) (applying *Irwin* to the FTCA), *vacating* 901 F.2d 680 (8th Cir.1990), *on remand* 933 F.2d 639 (8th Cir.1991).

The discovery rule under the FTCA is established federal law. *See K.E.S. v. United States*, 38 F.3d 1027, 1029 (8th Cir.1994). In medical malpractice cases, the Supreme Court has articulated the discovery rule to be that the claim does not accrue "until the plaintiff has discovered both his injury and its cause." *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979). The cause of action accrues at

---

**1.** The United States moved under Rule 12(b)(1) under the misperception that the statute of limitations is jurisdictional. This Court treats the motion under Rule 12(b)(6), the correct rule if the statute of limitations would bar plaintiff's claim.

that time even if plaintiff does not know that the injury is legally redressable. *See id.,* at 123–24, 100 S.Ct. at 360. If plaintiff fails to act despite knowledge of the harm, then plaintiff loses the claim. *See id.*

There is no reason to limit the discovery rule to FTCA medical malpractice cases. Although the First Circuit has not applied *Kubrick*'s test to a conversion claim under the FTCA, it has done so in FTCA cases just as far afield from medical malpractice. *See, e.g., Attallah v. United States,* 955 F.2d 776, 778–780 (1st Cir.1992). The Attallahs sued under the FTCA, claiming the government negligently failed to provide adequate security for money stolen when Customs Service agents murdered a courier, and the First Circuit held they were protected by the discovery rule. *See id.*

In articulating the rule here, this Court relies on FTCA cases. *See Attallah,* 955 F.2d at 778–780; *Nicolazzo v. United States,* 786 F.2d 454, 455–57 (1st Cir.1986); *Magdalenski v. United States,* 977 F.Supp. 66, 68–71 (D.Mass.1997), but also notes similar First Circuit precedent on discovery rules both under federal law, *see Oropallo v. United States,* 994 F.2d 25, 28–32 (1st Cir.1993) (federal tax law), and state law, *see Bernier v. Upjohn Co.,* 144 F.3d 178, 180 (1st Cir.1998) (Massachusetts law); *Cambridge Plating Co., Inc. v. Napco, Inc.,* 991 F.2d 21, 25–30 (1st Cir.1993) (same); *Tagliente v. Himmer,* 949 F.2d 1, 4–6 (1st Cir.1991) (same); *Marrapese v. Rhode Island,* 749 F.2d 934, 937 & 943–944 (1st Cir.1984) (federal and Rhode Island law). The doctrine under non-FTCA claims is substantially similar, and the cases provide a framework through which to apply the law in this case.

■ This Court holds that the discovery rule applies in FTCA conversion cases. The rule protects plaintiffs who suffer from "blameless ignorance." *See Kubrick,* 444 U.S. at 120 n. 7, 100 S.Ct. at 358 n. 7. In order for the statute of limitations to be tolled, the factual basis for the cause of action must have been inherently unknowable at the time of the injury. *See Attallah,* 955 F.2d at 780; *Tagliente,* 949 F.2d at 4. The action accrues when the injured party knew or, in the exercise of reasonable diligence,

should have known the factual basis for the cause of action. *See Kubrick,* 444 U.S. at 121–25, 100 S.Ct. at 359–61; *Attallah,* 955 F.2d at 780; *Tagliente,* 949 F.2d at 4.

■ There is an apparent conflict in the First Circuit as to whether this test is objective or subjective, whether courts ask "Was it possible to discover the injury and its cause?" or ask "Did this plaintiff act reasonably in trying to discover the injury and its cause?" *Compare Attallah,* 955 F.2d at 780 (holding that test is objective); *Tagliente,* 949 F.2d at 4 (same) *with Cambridge Plating Co.,* 991 F.2d at 26–27 (holding that the test is subjective). This Court adopts the objective standard because it is the dominant view and because the *Cambridge Plating* Court explicitly applied Massachusetts law.

### 2. *Applying the law to the facts of this case*

The United States argues that Nero's withdrawal of money from Old Stone was not inherently unknowable because plaintiff, as sole heir, had immediate access to testamentary documents, bank statements and other financial records after Miller's death. Because plaintiff had the legal power to access her father's financial records, the United States argues, she must be presumed to know the facts that she would have discovered therein:

> Certainly by October 1993, when Nero was named executor, she could have simply demanded a review of the pertinent financial records—or, she could have petitioned the Probate Court for these documents, as well as for an accounting.

(Reply of the United States to Pl.'s Opp'n to the United States' Mot. to Dismiss at 10.) The United States is correct that plaintiff cannot seek solace from the discovery rule if reasonable diligence would have discovered the loss.

■ However, the discovery rule does not require every potential claimant to examine every document that he or she has the legal power to examine. The First Circuit has been clear that a plaintiff assumes the duty to investigate where there was some warning that there might have been an injury. *See Bernier,* 144 F.3d at 180; *Mar-*

*rapese,* 749 F.2d at 937. This triggering warning need not alert the plaintiff to both injury and cause, but it must suggest that something is wrong. In *Marrapese,* the plaintiff claimed that he could not know until years afterwards that a chemical that police forcibly painted on his skin was a carcinogen. *See Marrapese,* 749 F.2d at 937. The *Marrapese* Court said he had a duty to investigate the chemical immediately because he had suffered a burning sensation and rash along with evident constitutional violations. *See id.* Similarly, the *Bernier* Court pointed to a letter the plaintiff received warning her that her cancer may have been caused by a third party. *See Bernier,* 144 F.3d at 180.

This triggering warning is inherent in the concept of *reasonable* diligence because it would be unreasonable to expect people to investigate every possible injury they might ever have suffered. That is why medical malpractice claims do not accrue until the plaintiff is correctly diagnosed, *see Nicolazzo,* 786 F.2d at 456; *Magdalenski,* 977 F.Supp. at 68–69, but a patient who knows his injury bears the burden of investigating its severity and cause, *see Bernier,* 144 F.3d at 180; *Marrapese,* 749 F.2d at 937. Objectively, all patients have the ability and the right to speak with some hypothetical doctor who would correctly identify their injury and cause. If the discovery rule operated under the standard proposed by the United States, then no patient would merit its application. But courts have used the rule to protect Nicolazzo, Magdalenski and other plaintiffs who had not received a warning that triggered reasonable diligence.

■ From the pleadings in this case, it cannot be determined precisely when plaintiff received that warning. It is still unsettled what that warning might have been. Giving plaintiff the benefit of all reasonable inferences, the discovery rule may toll the statue of limitations past July 2, 1995. Therefore, the United States' motion to dismiss Count I is denied.

■ In the interest of clarifying the issue for further argument and discovery, this Court rejects plaintiff's claim that the warning did not come until Nero's conviction in December 1996. At a minimum, the claim accrued when plaintiff knew Nero had been indicted for financial irregularities. In *Attallah,* the First Circuit held that the cause of action accrued with the indictment of the Customs agents who murdered the courier. *See Attallah,* 955 F.2d at 780. Similarly, once plaintiff had reason to suspect Nero was dishonest, she was warned to make an inquiry into Miller's financial documents.

## II. *Plaintiff's Motion For Summary Judgment on Count II*

Before addressing this motion on the merits, this Court must settle the confusion that the parties have created for themselves. In the various filings, the parties could not agree on what statute applies or even what kind of claim plaintiff has brought, (*compare* Mem. In Supp. of Pl.'s Mot. For Summ.J. as to Count II at 2 (plaintiff characterizing it as breach of contract) *with* Mem. In Opposition to Pl.'s Mot. For Summ.J. as to Count II at 2 (FDIC–Receiver characterizing it as conversion)).

First, Count II is a claim against FDIC–Receiver for breach of contract. That is supported both by precedent, *see Westerly Community Credit Union v. Industrial Nat'l Bank,* 103 R.I. 662, 240 A.2d 586, 592–93 (R.I.1968), and by plaintiff's characterizations in the pleadings and through counsel at the July 29, 1998 hearing. Second, FDIC–Receiver has no defense under the Fiduciaries' Emergency Act, R .I.G.L. §§ 18–3–1 to –16 (1997). The Act applies to wartime emergencies. *See* R.I.G.L. § 18–3–3. Instead, this Court will apply R.I.G.L. §§ 18–4–15 to –16.

### A. *Legal standard for a motion for summary judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Electric Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

### B. *Discussion*

At its most basic, plaintiff's claim is that Ragnar Miller deposited $23,331.72 with Old Stone and that the bank did not return it to him or his Estate. Old Stone allowed withdrawal of $23,331.72 from Miller's account on August 27, 1993 by Nero and he deposited that money in his own account. This claim turns on the legal significance of the bank's action, i.e., whether it was providing money to Miller through his agent Nero. If so, it fulfilled its obligation; if not, then the bank essentially gave money to a stranger and owes $23,331.72 to plaintiff.

### 1. *The law of R.I.G.L. § 18-4-16*

FDIC–Receiver contends that R.I.G.L. § 18-4-16 provides it with a defense. The statute states:

A person who in good faith pays or transfers to a fiduciary any money or other property, which the fiduciary is authorized to receive, is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of the payment or transfer is not invalid in consequence of a misapplication by the fiduciary.

R.I.G.L. § 18-4-16. "Fiduciary" is defined to include an agent. *See* R.I.G.L. § 18-4-15(a)(2). Plaintiff argues that this section does not apply here because when the bank allowed Nero to withdraw the money, he was not an agent of Miller and was not "authorized to receive" the proceeds of the bank account.

Plaintiff's argument is not specious. Agency terminates at the death of the principal. *See Industrial Trust Co. v. Colt,* 46 R.I. 319, 128 A. 200, 205 (R.I.1925); *see also* Restatement (Second) of Agency § 120, at 304 (1958) [hereinafter "Restatement"]. Therefore, Nero was neither Miller's actual agent nor the Estate's executor on August 27, 1993, when the withdrawal was made. Plaintiff notes cases in which banks have been held liable for disbursing money to a person without legal standing to receive it. *See, e.g., Walker v. Portland Savings Bank,* 113 Me. 353, 93 A. 1025, 1026-27 (Me.1915).

However, there are two general rules of agency law that apply in this case that were not applicable in *Walker:* first, termination of agency does not terminate apparent authority, *see* Restatement § 124A, at 316, and second, a third party who has previously dealt with a principal through an agent may rely on that agency status until receiving notice of the termination, *see* Restatement § 127, at 324. In *Walker,* the Portland Savings Bank relied on a written document that, even if genuine, was not legally valid because it was not presented within 30 days of the decedent's death. *See Walker,* 93 A. at 1026. Portland Savings Bank had no possible legal defense. In contrast, FDIC–Receiver claims to have relied on Nero's prior agency status. The issue of law before this Court then is whether that reliance is sufficient to qualify Nero as an

agent and, therefore, a fiduciary under R.I.G.L. § 18–4–16.

The Rhode Island Supreme Court has not decided this issue of law, so this Court must make "an informed prophecy of what the court would do in the same situation." *Blinzler v. Marriott Int'l. Inc.*, 81 F.3d 1148, 1151 (1st Cir.1996). To do this, this Court seeks "guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." *Id.* This Court relies on the Restatement (Second) of Agency because the Rhode Island Supreme Court has done so while discussing other agency issues. *See, e.g., Menard & Co. Masonry Bldg. Contractors v. Marshall Bldg. Sys., Inc.*, 539 A.2d 523, 526 (R.I.1988).

 First, termination of authority does not terminate apparent authority. *See* Restatement § 124A, at 316. Therefore, death of a principal ends the actual authority of the agent, but it does not erase the actions of the principal, such as the creation of a power of attorney, that took place before death. Apparent authority is terminated when the third party has notice of the termination of the agent's actual authority. *See* Restatement § 125, at 318.

Second, "[t]he general rule is that the acts of an agent, within the apparent scope of his authority, are binding on the principal as against one who had formerly dealt with him through the agent and who had no notice of the revocation." 3 Am.Jur.2d *Agency* § 52, at 553 (1986); *see also* Restatement § 127, at 324; *accord Johnson v. Christian*, 128 U.S. 374, 381, 9 S.Ct. 87, 89, 32 L.Ed. 412 (1888). Such a third party is justified in assuming the continuance of the agency relationship. *See* 3 Am.Jur.2d *Agency* § 52, at 553–54; *Johnson*, 128 U.S. at 381, 9 S.Ct. at 89–90.

Under both of these common law rules, the principal would no longer be bound by the actions of the agent once the third party has notice of termination. The Restatement defines that notice, in relevant part, as when the third party:

"knows, has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him."

Restatement § 135, at 333.

 The public policy considerations of R.I.G.L. 18–4–16 are consistent with these common law rules. Third parties cannot monitor the communications between principal and agent, so the law does not hold them responsible for knowing whether the relationship has been revoked or whether the agent used the principal's money honestly. It is worth noting that the common law rules could independently protect FDIC–Receiver here and that the statute has a broad definition of fiduciary, including both agent and "any other person acting in a fiduciary capacity." R.I.G.L. § 18–4–15(a)(2). Thus, the Rhode Island Supreme Court would probably read the definition to include this quasi-agency relationship that exists when third parties rely on the apparent authority of former agents before they have notice of the termination. As such, R.I.G.L. § 18–4–16 protects such a third party who in good faith pays or transfers money to such an apparent agent.

### 2. Applying the law to the facts of this case

The notice to the bank, plaintiff argues, was that Old Stone paid two checks made payable to the Estate of Ragnar Miller in May and June 1993. (*See* Pl.'s Statement of Material Facts Not in Dispute, in Supp. of Mot. For Summ.J. ¶ 3.) FDIC–Receiver argues that the checks may have been issued blank, a reasonable inference because one of the checks that eventually was payable to the Estate of Ragnar Miller was issued the day *before* Miller died. (*See* Mem. In Opposition to Pl.'s Mot. for Summ.J. as to Count II at 8.) Similarly, FDIC–Receiver argues that there is no evidence that the Old Stone employees who issued the May and June checks had knowledge of the May and June checks. (*See* id.)

 Viewed in the light most favorable to FDIC–Receiver, the issue of notice is still in dispute and is material to plaintiff's claim. No evidence has been offered as to who handled the checks, when "Estate of Ragnar

Miller" was written on them, and who handled the $23,331.72 withdrawal. There are no cases cited directly on point whether checks made out to the estate of an individual constitute notice to the drawee bank that said individual has died. Under the summary judgment standard, this Court must assume that notice was insufficient and Old Stone acted in good faith. Therefore, plaintiff's motion for summary judgment on Count II is denied.

### III. *FDIC–Corporate Motion To Dismiss Count III*

The issue before this Court is whether FDIC–Corporate had an insurance liability for plaintiff's account when Old Stone was closed.[2] FDIC–Corporate argues that the FDIC insures only funds on deposit at the time the bank fails. Plaintiff responds that Old Stone was obligated to give credit to the savings account because Nero's withdrawal was unauthorized, and the FDIC must insure that obligation.

#### A. *Legal standard for a motion to dismiss*

This Court applies the same legal standard applied above when it considered the United States' motion to dismiss.

#### B. *Discussion*

█ It is undisputed that Miller's funds were not in a savings account at the time Old Stone failed. (*See* Am.Compl. at ¶¶ 13–14.) Therefore, this motion is controlled by First Circuit precedent:

> The FDIC contends that it is entitled to rely exclusively on the account records of the failed institution—and so it did not have to look further afield[.] Our analysis of the FDIC regulations, the body of case law, and the policy concerns underlying these regulations leads us to agree.

*Villafane–Neriz v. FDIC,* 75 F.3d 727, 731 (1st Cir.1996). Thus, this Court must allow FDIC–Corporate to rely on Old Stone's ac-

count records. The *Villafane–Neriz* rule is explicit. If Old Stone did not have a record of Miller's money on account when it failed, then Miller's Estate and now plaintiff are not entitled to insurance. *Accord Raine v. Reed,* 14 F.3d 280, 284 (5th Cir.1994); *In Re Collins Securities Corp.,* 998 F.2d 551, 554 (8th Cir.1993).

The First Circuit's decision outlines the policy and legal basis for this ruling, so those need not be repeated here. However, because this motion will be dispositive, this Court emphasizes that Miller did not have a "deposit" under the statutory definition at the time of the bank's failure:

> The term "deposit" means—
>
> (1) the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a . . . savings account.

12 U.S.C. § 1813($l$)(1). Plaintiff tortures the definition to claim that Old Stone Bank is "obligated to give credit" for the $23,331.72 at issue because Nero's withdrawal was unauthorized. However, dismissal is appropriate because if Nero's withdrawal was unauthorized, plaintiff could obtain a judicial judgment against Old Stone. That obligation would not be a deposit in the "usual course of business." Plaintiff's logic would make any bank's obligation a "deposit" in that bank, and it would force FDIC–Corporate to insure every judgment creditor or perhaps even every creditor of the bank. Certainly FDIC insurance was not designed to insure against slip-and-fall claims, breached contracts and unpaid bills.

Plaintiff attempts to distinguish *Villafane–Neriz* by arguing that Old Stone's default occurred in January 1993 when the Resolution Trust Corporation was appointed as conservator. However, FDIC–Corporate notes that Miller had money in two legally distinct

---

2. In its memorandum supporting its motion to dismiss, FDIC–Corporate noted that plaintiff was unclear whether it alleged liability based on insurance or on a tort claim. FDIC–Corporate argued that it is not the proper party defendant for a tort claim.

Plaintiff addressed only the insurance issue in its objection to the motion to dismiss. Therefore, this court assumes that Count II is based on an insurance and not a tort claim. A tort claim would be dismissed in any event.

institutions: Old Stone Bank, A Federal Savings Bank (until January 29, 1993) and its successor Old Stone Federal Savings Bank (January 29, 1993 to July 8, 1994). Deposits in the first institution were transferred to the latter. It was the second institution that failed and is involved in this case. Miller did not lose any money in January 1993, so plaintiff has no claim for insurance for deposits then-held by the Old Stone Bank, A Federal Savings Bank.

Therefore, FDIC–Corporate's motion to dismiss Count III is granted.

### V. *Plaintiff's Motion To Amend*

Plaintiff moves to augment her Amended Complaint with Count IV, a negligence claim against the United States. The United States opposes the motion, arguing that Count IV would be futile because this Court lacks jurisdiction to hear the claim.

### A. *Legal standard for a motion to amend*

■ Leave to amend should be freely granted as justice so requires. *See* F.R.C.P. 15(a). Amendments should be denied where they would be futile. *See Maldonado v. Dominguez,* 137 F.3d 1, 11 (1st Cir.1998). Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *See Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996). "In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*

### B. *Discussion*

The United States correctly states that a claim would be futile if this Court lacked jurisdiction, so the standard for a Rule 12(b)(1) motion is appropriate.

■ Filing a proper administrative claim is a jurisdictional prerequisite to filing an action pursuant to the FTCA. *See Coska v. United States,* 114 F.3d 319, 322 (1st Cir. 1997); *Santiago–Ramirez v. Secretary of Defense,* 984 F.2d 16, 18–19 (1st Cir.1993). The operative statute provides that:

[a]n action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied.

28 U.S.C. § 2675(a) (1998). The section "requires that the potential plaintiff give notice to the government of the nature of the claim and the damages requested." *Santiago–Ramirez,* 984 F.2d at 18. The First Circuit "approaches the notice requirement leniently, recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims." *Id.* at 19 (internal punctuation and citation omitted).

The rule does not require administrative claims to put forth a legal theory in order to satisfy § 2675. *See id.* at 19–20 (plaintiff provided notice even where letter did not mention the FTCA, negligence or tort); *see also* United States' Mem. in Supp. of its Objection to Pl.'s Mot. To Amend at 3. The United States argues that a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts. (*See* United States Mem. in Supp. of its Objection to Pl.'s Mot. To Amend at 3 (citing *Dundon v. United States,* 559 F.Supp. 469, 476 (E.D.N.Y.1983))).

In this case, plaintiff does not seek to add new facts or circumstances to her complaint as the plaintiff attempted in *Munsill v. United States,* 14 F.Supp.2d 214, 217–18 (D.R.I. 1998). Since the beginning, plaintiff's claim has been factually simple: that Old Stone gave Miller's money to a thief. A negligence claim alters the legal arguments of the case, but not the facts that the government must investigate to contemplate settlement. In that way, plaintiff sits aligned with successful claimants whose administrative claims included no cause of action, *see Santiago–Ramirez,* 984 F.2d at 19–20, or asked for damages that could be interpreted as certain or variable, *see Corte–Real v. United States,* 949 F.2d 484, 486–87 (1st Cir.1991). Plaintiff is not like a claimant who never made a sum-certain demand for personal injuries and was denied relief by the First Circuit. *See Ko-*

*karas v. United States,* 980 F.2d 20, 21–23 (1st Cir.1992).

The United States cannot dismiss claims with "bureaucratic overkill." *Corte–Real,* 949 F.2d at 486. The purpose of administrative notice is to allow the government to investigate the claim and determine if settlement would be in the best interest of all. *See id.; Santiago–Ramirez,* 984 F.2d at 18. The United States, through the FDIC, had all the information it needed to investigate and consider settlement in this case. It suffers no injury if it must face a negligence claim in addition to the conversion claim already in Count I.

Therefore, the motion to amend is granted.

IV. *Conclusion*

For the foregoing reasons, this Court makes the following rulings: The United States' motion to dismiss Count I is denied. Plaintiff's motion for summary judgment on Count II is denied. FDIC–Corporate's motion to dismiss Count III is granted. Plaintiff's motion to amend the Amended Complaint to add Count IV is granted.

It is so Ordered.