USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1696

 I.V. SERVICES OF AMERICA, INC.,

 Plaintiff, Appellant,

 v.

 INN DEVELOPMENT & MANAGEMENT, INC., ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 
 
 
 
 Francis A. Miniter with whom Daniel S. Fabricant, William D.
Gillis and Miniter & Associates were on brief for appellant.
 Edward S. Rooney with whom Eric P. Finamore, Patrick J. Riley
and Riley, Burke & Donahue were on brief for appellees.

June 28, 1999

 
 

 CAMPBELL, Senior Circuit Judge. This appeal concerns a
demand for payment for medical services provided to Shelia Daly, a
former employee of the Sheraton Hotel in Mansfield, Massachusetts,
by Daly's medical care provider, appellant I.V. Services of
America, Inc. ("I.V. Services"). I.V. Services sued Daly's
employer and the administrator of its employee health benefit plan
in the district court, seeking payment under the Employee
Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. 1001
et seq. The district court dismissed on the ground that the suit
was barred by the statute of limitations, finding that I.V.
Services waited, without justification, over five years from the
time its action accrued before bringing suit. I.V. Services
appeals, claiming the district court erred by refusing to apply
equitable tolling principles to the limitations period. We affirm.

 I.
 During Daly's employment at the Sheraton Hotel in
Mansfield, the hotel was owned and managed by Appellee Inn
Development & Management, Inc. ("IDM"). In May 1988, IDM adopted
a self-funded health benefit plan ("the Plan") for its employees
and their dependents. Under the Plan, IDM was responsible for
paying claims for medical care directly out of its own pocket and
administering the Plan. Four months later, IDM contracted with
Appellee Reliastar Life Insurance Company ("Reliastar") via an
Administrative Services Only Agreement ("the ASO agreement") to
have Reliastar act as the claims processor for IDM's Plan. 
Reliastar's duties under the ASO agreement included various claims
processing functions, such as claim investigation and record
keeping. 
 In April 1990, Daly began receiving intravenous
antibiotic treatment from I.V. Services for Lyme disease. Her
treating physician recommended that the treatment continue for six
to eight weeks. Prior to receiving treatment from I.V. Services,
Daly signed a Benefits Assignment form ("the assignment") which
authorized her medical insurance benefits to be paid directly to
I.V. Services.
 On May 14, 1990, Daly submitted a claim to Reliastar for
her treatment at I.V. Services. Over the next several months,
Reliastar requested, and ultimately received, information both from
I.V. Services and Daly's treating physician in order to evaluate
her claim. On October 15, 1990, Reliastar advised I.V. Services by
letter that its review of Daly's claim was complete. Noting that
Daly's claim for treatment from April 11 to August 14, 1990 totaled
$48,266.65, Reliastar concluded that only two weeks of treatment
were "medically necessary" as defined by the Plan. Reliastar
further stated that it would reconsider its decision only if it
received additional written evidence contradicting its conclusion.
 In November 1990, Daly's treating physician wrote to
Reliastar that he believed, based on medical literature, that more
than two weeks of treatment was medically necessary for Daly's case
of Lyme disease. This letter caused Reliastar to reconsider its
decision and authorize payment for an additional two weeks of
treatment (for a total of four weeks). Reliastar advised Daly and
her treating physician of its revised decision by letter dated
April 19, 1991. The letter also stated that the claim for the
balance of Daly's treatments from I.V. Services were still being
denied as not "medically necessary." I.V. Services received
$9,246.66 from the IDM Plan funds for four weeks of Daly's
treatment.
 On May 13, 1991, Mary Lou Nicoli, a regional claims
representative for Reliastar, sent another letter to Daly, her
treating physician, and IDM explaining why the remainder of her
claim had been denied. This letter was sent as a "follow-up" to a
telephone conversation five days earlier in which Daly had called
Reliastar and asked Nicoli to explain Relaistar's decision.
 On August 9, 1996, I.V. Services brought suit against IDM
and Reliastar, citing the enforcement provisions of ERISA. These
provisions entitle an ERISA plan "participant" or "beneficiary" to
bring an action "to recover benefits due him under the terms of his
plan, to enforce his rights under the terms of the plan, or to
clarify his rights to future benefits under the terms of the plan." 
29 U.S.C. 1132(a)(1)(B). IDM cross-claimed against Reliastar for
contribution and indemnification, and moved for summary judgment
against I.V. Services, arguing, among other things, that the claim
was barred by the applicable limitations period. Reliastar in turn
moved for summary judgment against I.V. Services and IDM.
 The district court referred the motions to a magistrate
judge for a report and recommendation. The magistrate recommended
that I.V. Services' action be dismissed as against both IDM and
Reliastar, and that Reliastar's motion for summary judgment against
IDM therefore be dismissed as moot. He determined that the
applicable limitations period derived from the Plan's internal
limitations clause, rather than from the statute of limitations
applicable to ERISA actions or Massachusetts contract disputes. 
The Plan itself states that a claimant must request an appeal "at
any time during the 60 day period following receipt of the notice
of the denial of the claim" and commence legal action "within 3
years after the date proof of loss must be submitted" unless the
"the Planholder's state requires longer time limits than these[.]" 
The magistrate further determined that, because Massachusetts law
did not require a longer time period than did the Plan, the Plan's
three-year internal limitations period controlled. 
 According to the magistrate, I.V. Services' action
accrued at the time of the denial of benefits, which was, "at the
latest, May 13, 1991" the day Nicoli sent her "follow-up" letter
explaining why Daly's claim had been denied. The magistrate
concluded that I.V. Services' action, filed on August 9, 1996, was
"belated and ineffective," and he recommended that it be dismissed. 
The district court adopted the magistrate's "well-reasoned" report
and recommendation, adding only a two-page summary to the
magistrate's findings and conclusions. This appeal followed.

 II.
 I.V. Services does not challenge the district court's
decision to apply the three-year statute of limitations period
specified in the Plan, nor the court's determination that its claim
accrued, at the latest, on May 13, 1991. Rather, it argues that
the three-year period should be equitably tolled so as to permit
the filing of Daly's complaint in 1996. I.V. Services identifies
three alternative bases for equitable tolling. First, it says that
there was evidence that Daly never received a copy of the Plan,
creating a factual issue as to whether she received appropriate 
notice of the Plan's three-year limitation period. Second, when
I.V. Services and Daly requested a copy of the Plan from Reliastar,
their requests were allegedly ignored or rebuffed. Third, it
argues that the denial of claim letter that Daly received was
deficient under applicable regulations, thus excusing her failure
to comply with the three-year limitations period. Assuming,
arguendo, that one or another of these points, if established,
would equitably toll the running of the limitations period, I.V.
Services has not sufficiently established any of them. 
 
 A. Did Daly Receive a Copy of the Plan?
 Under ERISA, the administrator of each employee benefit
plan must furnish to each participant covered under the plan and to
each beneficiary who is receiving benefits under the plan a summary
plan description that is "written in a manner calculated to be
understood by the average plan participant, and [is] sufficiently
accurate and comprehensive to reasonably appraise such participants
and beneficiaries of their rights and obligations under the plan." 
29 U.S.C. 1022 (a). I.V. Services argues that IDM and Reliastar
failed to comply with this requirement by not furnishing Daly with
a copy of the Plan. Although not expressly stated, the implication
is that it would be inequitable to apply the Plan's internal
limitations period to someone who had no opportunity to learn of
it.
 As the party seeking to invoke the doctrine of equitable
tolling to avoid application of the limitations period, I.V.
Services has the burden of proving that Daly never received a copy
of the Plan. See Catrone v. Thoroughbred Racing Ass'n of North
America, Inc., 929 F.2d 881 (1st Cir. 1991) (citing Franklin v.
Albert, 411 N.E.2d 458, 463 (Mass. 1980)) ("The plaintiff bears the
burden of presenting facts sufficient to take the case outside the
statute of limitations."). Attempting to satisfy this burden, I.V.
Services points to Daly's deposition testimony. The relevant
testimony is as follows:
 Q: Let me ask you now, at the time that you started
 working or at some time when you worked at the
 Sheraton, do you remember ever getting some written
 information about the health insurance that you 
 that was covering you from the people at Sheraton?
 A: I I don't remember. I don't remember
 specifically. If you want me to remember a
 detailed time, I don't remember.
 Q: No, no, my question is just whether you remember
 getting 
 A: Usually when we had different insurances and they
 would change or whatever, they would usually have
 like a meeting and talk to us about it or they
 would give us literature on it. Usually that's how
 it would work.
 Q: Let me show you this document, which is Exhibit 18
 at Maureen Teachman's deposition [the Plan], and
 just ask you whether you ever recall seeing that
 document before.
 A: I don't know, this is kind of big. I don't know if
 I recall this.
 Q: Okay.
 A: You know? I do recall IDM Development &
 Management, Inc., I do recall that. Because that
 was one of the companies that was involved at the
 Sheraton within the ten years or whatever years I
 worked there.
 Q: Okay. And but as you sit here today, you don' t
 know one way or the another whether you saw that
 document?
 A: You know, I'd imagine I would imagine. Yeah, I
 don't recall.
 Q: Just want to know what you remember.
 A: Yeah. It's just like I said, we had so many people
 you know, I would get what I was supposed to get,
 you know, and that's it.
 
 The magistrate characterized this testimony as
"equivocal, at best" and stated: "If anything, Daly's testimony
supports an assumption that she received a copy of the Plan during
her employment with IDM." I.V. Services interprets the exchange
differently, claiming that only two inferences are possible from
this testimony -- either Daly never saw the Plan before or she
could not remember if she had -- and it is entitled, as the party
opposing a motion for summary judgment, to the more favorable of
those two inferences. 
 I.V. Services is correct insofar as it argues that it is
entitled to the benefit of all reasonably drawn inferences. See
Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). But the
only reasonable reading of Daly's testimony is that she did not
recall whether she ever received a copy of the Plan. Her mere lack
of recollection does not suffice to create an issue of fact over
whether or not she received a Plan copy. When asked if she
"remember[ed] ever getting some written information about the
health insurance[,]" she responded that she did not remember
specifically. Then, when shown the Plan itself and asked if she
"ever recall[ed] seeing that document before" she testified that
she "would imagine" that she did but did not actually recall. 
 Absent from Daly's testimony is the fact that might
indicate the existence of a genuine issue for trial -- i.e.,
evidence that she never received a copy of the Plan. In this
regard, the present case is similar to Posey v. Skyline Corp., 702
F.2d 102, 106 (7th Cir. 1983). In Posey, the plaintiff sought to
defeat the defendant's motion for summary judgment by arguing for
equitable tolling, based on the defendant's alleged failure to post
conspicuously a notice advising employees of their rights under the
Age Discrimination in Employment Act. The plaintiff's support for
this claim was his own affidavit in which he averred: "[t]hat he
frequently, i.e., almost every working day, glanced at the posters
on the bulletin board in the employees' lunch room . . . and
promptly read any new posted notices, and that he never saw and
does not recall ever reading a notice to employees of their rights
under the [ADEA] . . ." Id. at 105. The Seventh Circuit affirmed
the district court's grant of summary judgment for the defendant,
stating, "the mere possibility that a factual dispute may exist,
without more, is an insufficient basis on which to justify denial
of a motion for summary judgment. Posey's affidavit perhaps at
best hints that a question of fact may exist in this case. Rule
56, however, demands that Posey show specific facts indicating that
a genuine issue does indeed exist for trial." Id. at 106; see also
Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d
Cir. 1980))("The litigant opposing summary judgment . . . must
bring to the district court's attention some affirmative indication
that his version of relevant events is not fanciful.").
 As in Posey's case, Daly's deposition testimony that she
did not remember receiving the Plan at best raises one possibility,
among others, that a copy was never sent to her. That is not
enough. See, e.g., Posey, 702 F.2d at 106; Cadle Co. v. Hayes, 116
F.3d 957, 960 (1st. Cir. 1997) ("[E]stablishing a genuine issue of
material fact requires more than effusive rhetoric and optimistic
surmise."); Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181
(1st Cir. 1989) ("[the] evidence illustrating the factual
controversy cannot be conjectural or problematic; it must have
substance in the sense that it limns differing versions of the
truth which a factfinder must resolve at an ensuing trial."). 
 
 B. Did IDM or Reliastar Conceal the Terms of the Plan?
 I.V. Services argues alternatively that equitable tolling
is required because IDM or Reliastar allegedly refused repeated
requests to forward a copy of the Plan, thereby concealing its
terms. This argument need not detain us long. The magistrate
found that "[w]hat the record shows, however, is that [I.V.
Services] made no effort to obtain a copy of the Plan until 1995,
well after three years from the initial denial of Daly's claim for
benefits." The district court echoed this finding in its order
adopting the magistrate's report. 
 I.V. Services contends that this finding is not supported
by the record. It points to the testimony of I.V. Services
President, Maureen Teachman, who stated that she contacted IDM and
Reliastar in an effort to procure a copy of the Plan. In her
affidavit, however, Teachman's states that she attempted to obtain
a copy of the Plan "in 1995." This statement is reiterated in her
deposition, where she testified that on August 10, 1995, she sent
a letter to IDM via fax requesting a copy of the Plan. I.V.
Services contends that, prior to this time, Teachman had spoken
with an employee at IDM named Nancy Warino about getting a copy. 
However, Teachman testified that she had between three and six
conversations with Warino, the first of which took place
"[p]robably some time in the range of [the August 10, 1995] fax, a
few months before perhaps." 
 In short, the district court was not in error in stating
that I.V. Services did not seek to obtain a copy of the Plan until
after the applicable limitations period had already run. Acts of
alleged concealment by IDM or Reliastar after the statute had run
would not warrant equitable tolling. Cf. Bernier v. Upjohn Co.,
144 F.3d 178, 180 (1st Cir. 1998) ("A party seeking to toll the
statute must at the very least show that the information could not
have been found by a timely diligent inquiry[.]") (emphasis
supplied).
 
 C. Did the Defective Notice Warrant Equitable Tolling? 
 I.V. Services' final contention is that the district
court should have excused it from complying with the Plan's three-
year limitation period because it was denied the opportunity to
exhaust the Plan's internal grievance procedures. The district
court found that Appellees' letters denying Daly's claim did indeed
fail to comply with the Department of Labor's requirement that a
denial of benefits letter provide "[a]ppropriate information as to
the steps to be taken if the participant or beneficiary wishes to
submit his or her claim for review." 29 C.F.R. 2560.503-
1(f)(4). In light of this deficiency, the court excused I.V.
Services' failure to exhaust its administrative remedies prior to
filing suit. The court, however, refused to toll the three-year
limitation period on this basis, finding no genuine dispute that,
by May, 1991 at the latest, both Daly and I.V. Services were aware
that the claim for reimbursement had been denied, and that a cause
of action had accrued. 
 According to I.V. Services, the limitations period should
have been tolled as well. It claims that, had it been given the
opportunity to utilize the Plan's administrative grievance
procedures, that process would have "pushed forward significantly
the time when the Plan's three-year limitations period for judicial
action would have started running." 
 The Plan itself indicates the contrary. It states in
relevant part: "Legal action may not be taken to receive benefits
until 60 days after the date proof of loss is submitted according
to the requirements of the Plan. Legal action must be taken within
3 years after the date proof of loss must be submitted." The "proof
of loss" referred to is a form or other less formal submission
which must be returned "within 90 days after the date of loss." 
Thus, the beginning of the Plan's limitations period is not
dependent on whether the claimant pursues administrative review. 
See note 2, supra. 
 Similarly, we are not persuaded by I.V. Services' final
salvo that refusing to toll the limitations period effectively
rewards the Appellees for their own failure to comply with the
notice regulations. Compare White v. Jacobs Engineering Group Long
Term Disability Benefit Plan et al., 896 F.2d 344, 351 (9th Cir.
1989) (claim letter so deficient as to deny information needed to
vindicate rights). As found by the district court -- and not
challenged on appeal -- I.V. Services knew, by May, 1991 at the
latest, that it had a cause of action regarding the denial of its
claim for reimbursement. The technical defect in the letter
denying the claim in no way altered this critical fact. 
 Because we affirm the district court's ruling that
equitable tolling was not warranted and summary judgment was
appropriate, we need not consider Reliastar's alternative bases for
affirmance. 
 Affirmed. Costs to appellees.